BARRACK RODOS & BACINE
Mark R. Rosen
One Gateway Center
Suite 2600
Newark, New Jersey 07102
Telephone: (973) 297-1484

BARRACK, RODOS & BACINE
Alexander Arnold Gershon
1350 Broadway, Suite 1001
New York, New York 10018
Telephone (212) 688-0782

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| RUBY RESNIK, | : CIVIL ACTION NO. |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MICHAEL J. BOSKIN, LARRY R. FAULKNER, | : |
| KENNETH C. FRAZIER, WILLIAM W. | : |
| GEORGE, REATHA CLARK KING, | : |
| MARILYN CARLSON NELSON, SAMUEL J. | : |
| PALMISANO, STEVEN S. REINEMUND, REX | : |
| W. TILLERSON, EDWARD E. WHITACRE, JR., | : |
| STEPHEN D. PRYOR, DONALD D. HUM- | : |
| PHREYS, HAROLD R. CRAMER, CHARLES | : |
| W. MATTHEWS, and EXXON MOBIL | : **JURY TRIAL DEMANDED** |
| CORPORATION, | : |
| | : |
| Defendants. | : |

_____:

**VERIFIED COMPLAINT**

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

1

## PARTIES AND JURISDICTION

1.     (a) Plaintiff Ruby Resnik is a stockholder of Defendant Exxon Mobil Corporation, and was a stockholder at the time of the transactions complained of herein, and has been such continuously since then.  Plaintiff's address is 101 Beacon Hill Dr. Apartment D13, Dobbs Ferry, NY 10522-2444.

(b) Defendant Exxon Mobil Corporation (the "Company" or "Exxon") is a New Jersey corporation with its principal place of business is 5959 Las Colinas Blvd., Irving, TX 75039-2298.

(c) Defendants Michael J. Boskin, Larry R. Faulkner, Kenneth C. Frazier, William W. George, Reatha Clark King, Marilyn Carlson Nelson, Samuel J. Palmisano, Steven S. Reinemund, Rex W. Tillerson, and Edward E. Whitacre, Jr., ("the Director Defendants"), are all the current members of the Company's board of directors.  They were also members of the board of directors during the period from 2008 to the present, except that defendant Frazier was first elected to the board of directors at the annual meeting on May 27, 2009.  The address of each of these defendants is c/o Exxon Mobil Corporation, 5959 Las Colinas Blvd., Irving, TX 75039-2298.

(d) Defendants Rex W. Tillerson, Donald D. Humphreys, Harold R. Cramer, Charles W. Matthews, and Stephen D. Pryor are the Named Executive Officers (see paragraph 6 below) at present and during 2008.  The address of each of these defendants is c/o Exxon Mobil Corporation, 5959 Las Colinas Blvd., Irving, TX 75039-2298.  For 2008, each of these defendants received payments under the Exxon Mobil Corporation 2003 Incentive Program (the "Program"). They and the Director Defendants are the Individual Defendants.

2.     The jurisdiction of this Court is founded upon § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa, and upon 28 U.S.C. §§ 1331 and 1367.

## CLAIMS

3.      The claims herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the United States Securities and Exchange Commission (the "SEC") promulgated thereunder, SEC Rule 14a-3(a)(1), 17 C.F.R. § 240.14a-3(a)(1), SEC Schedule 14A, 17 C.F.R. § 240.14a-101, and SEC Reg. S-K, 17 C.F.R. § 229.402.  In addition, Internal Revenue Code ("IRC") (26 U.S.C.) § 162(m) and Treas. Reg. (26 C.F.R.) § 1.162-27 are applicable. The claims herein also arise under New Jersey law.

4.      Plaintiff brings this action for relief based on two false or misleading proxy statements that failed to comply with SEC regulations governing the contents of proxy statements. Plaintiff also brings this action for relief based on the payment of non-tax-deductible compensation to the Named Executive Officers within the meaning of 17 C.F.R. § 229.402(a)(3). *See* Treas. Reg. § 1.162-27(c)(2) referring to them as Covered Employees and cross-referencing to SEC regulations.

5.      At the annual meeting of the Company's stockholders on May 28, 2003, the board of directors proposed, and the stockholders approved, the Program.

6.      Approximately 5,000 employees of the Company participate in the Program. Among those participating employees are the Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3). They are the principal executive officer ("PEO"), the principal financial officer ("PFO"), and the three most highly compensated executive officers other than the PEO and PFO who were serving as executive officers of the Company at the end of the last completed fiscal years.

7.      IRC § 162(m) subjects the Company to special treatment with respect to its compensation of the Named Executive Officers. Whereas IRC § 162(a)(1) allows the Company an income tax deduction for "a reasonable allowance for salaries or other compensation for personal

services actually rendered" by its employees, IRC § 162(m) imposes restrictions on that deduction for the compensation of the Company's Named Executive Officers.

8. Specifically, IRC § 162(m) provides that annual compensation in excess of $1 million is not tax-deductible unless the compensation is performance-based, pursuant to a plan containing objective criteria that the stockholders have approved. The Code provision is implemented by Treas. Reg. § 1.162-27. The Named Executive Officers, designated by the Treasury Regulations as Covered Persons, are the persons for whom tax-deductible compensation must meet the statutory standards. Treas. Reg. § 1.162-27(c)(2).

9. Other than the Program, the Company has no means to obtain a tax deduction for compensation paid to its Named Executive Officers in excess of $1 million per year each. If the Program does not conform to the standards of the IRC and the Treasury Regulations, the Company cannot take a tax deduction for such payments.

10. For the stockholders' annual meetings on May 28, 2008 and May 27, 2009, the board of directors solicited the stockholders' proxies to vote for the election of directors. All the defendants permitted the use of their names in the 2009 proxy statement. All of the defendants, except Frazier, Matthews, and Pryor, permitted the use of the names in the 2008 proxy statement.

11. Where a proxy statement seeks stockholder votes to elect directors, SEC regulations require the proxy statement to discuss the impact of the tax treatment of compensation if it is material. 17 C.F.R. § 229.402(b)(2)(xii). The 2008 and 2009 annual proxy statements stated that IRC § 162(m) imposed limits on the deductibility of compensation paid to the Named Executive Officers. Both proxy statements said that meeting IRC requirements for performance-based compensation removed those limits. Both proxy statements then made the following representations:

> The short term awards and restricted stock grants described above are designed to meet these requirements so that Exxon Mobil can continue to deduct the related expenses. The shareholders have approved the material terms of performance goals for awards to the senior executives. These material terms limit short term and long term awards to each of these executives to 0.2 and 0.5 percent, respectively, of income from continuing operations.

Those representations are materially false in a number of respects.

12. First, under Treas. Reg. § 1.162-27(e)(4)(vi) and the official Examples contained therein, Exxon was required to seek stockholder reapproval of this Program in 2008, five years after the original stockholder approval. But it did not seek such reapproval in 2008 or 2009. So none of the Program compensation that the Company paid to the Named Executive Officers for 2008 is deductible under IRC § 162(m). Moreover, none of the Program compensation that the Company will pay to its Named Executive Officers for 2009 will be deductible.

13. Second, those representations state that Exxon made grants of "restricted stock," and that such grants were tax-deductible. But the Program does not provide for tax-deductible restricted stock, only tax deductible "performance stock." Performance stock is not the same as restricted stock. The Program says:

> "Restricted stock" means shares subject to restrictions on transfer and potential forfeiture for a specific period.
>
> "Performance stock" means a share the delivery of which is subject to attainment of specified performance criteria.

As defined in the Program, restricted stock need not depend on the attainment of specified performance criteria, and performance stock need not be subject to restrictions on transfer or potential forfeiture. Grants of restricted stock do not meet the requirements for tax deductibility under the IRC, the Treasury Regulations, or the terms and provisions of the Program.

14. Third, in contrast to the representations in the 2008 and 2009 proxy statements, the Program does not mention short term awards or long term awards.

15. Fourth, in contrast to the representations in the 2008 and 2009 proxy statements, the Program does not provide for a 0.2 percent limit on short term awards. The Program provides that the maximum tax-deductible award to each Named Executive Officer is limited to one-half of one percent (0.5%) of Exxon's net income from operations for that year.

16. To qualify for the tax deduction the Program must provide for a maximum payment to any one Named Executive Officer for any one year. Treas. Reg. § 1.162-27(a)(4)(i). Here, the Program states that the maximum is one half of one percent (0.5%) of Exxon's "net income from operations for that year." But Exxon's financial statements from 2006 through 2008 do not have such a line as "net income from operations," or net operating income, or any similar line. From 2002 through 2005, Exxon's financials reported "Income from Continuing Operations," and "Discontinued Operations, Net of Income Tax." These were after the line for "Income Taxes." This is a very unusual way to report because "operating income" is usually reported before interest and the provision for income taxes. Thus, the Program is too vague to permit payments under the tax-deductible provisions for the Named Executive Officers.

17. But whether the Company has used an idiosyncratic method to report operating income, if the Company reports no such line on its financials, the Program fails the test of objectivity under Treas. Reg. § 1.162-27(e)(2)(ii) (third party having knowledge of relevant performance results could calculate the amount to be paid to employee).

18. Even if the Program were otherwise effective to provide for tax-deductible compensation, the maximum annual amount per employee is too high. If operating income were calculated the usual way, *i.e.*, before interest and income taxes, for 2008 operating income would

6

have been approximately $82 billion. One half of one percent of $82 billion is $410 million, an excessive amount of compensation by any measure. Moreover, Treas. Reg. § 1.162-27(a) provides that, "This section is not determinative as to whether compensation meets the requirements of [IRC] section 162(a)(1)." (requiring that compensation for personal services be reasonable).

### FIRST CLAIM FOR RELIEF
### (Against All Defendants)

19. Paragraphs 1 through 18 state a direct claim for relief for making materially false statements to the stockholders in the 2008 and 2009 proxy statements. As such, no pre-suit demand on the board is required.

20. The acts of the defendants have injured the plaintiff directly by providing materially false information that the SEC specifically requires in proxy statements. Mere money is inadequate as a remedy. Instead, injunctive relief in the form of corrective disclosures is required to ameliorate the injury.

21. The court should require the defendants to distribute to its stockholders corrected disclosures for 2008 and 2009.

### SECOND CLAIM FOR RELIEF
### (Against All Defendants)

22. Paragraphs 1 through 18 state a direct claim for relief for failure to seek stockholder reapproval of the Program. As such, no pre-suit demand on the board is required.

23. The failure of the defendants to present the Program for reapproval within five years has injured the plaintiff directly by depriving him of the right to vote, as required by the IRC and Treas. Reg. § 1.162-27(e)(4)(vi). Mere money is inadequate as a remedy. Instead, injunctive relief in the form of a new vote is required to ameliorate the injury.

24.     The court should require the defendants to seek stockholder approval of a new incentive program with a reasonable maximum amount for each Named Executive Officer that is objectively measured.

### THIRD CLAIM FOR RELIEF
### (On Behalf of the Company Against
### All Individual Defendants

25.     Paragraphs 1 through 18 state a claim for relief as a stockholder's derivative action on behalf of Exxon.

26.     The acts of the Individual Defendants in distributing the false 2008 and 2009 proxy statements have injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors.

27.     The Director Defendants' payment of non-tax deductible compensation under the Program to the Named Executive Officers, and the Named Executives Officers' acceptance of the same, is irrational and constitutes waste, and it injures the Company by causing it to lose tax benefits. An equitable accounting and reimbursement of the value of those tax benefits are required to redress the injury.

28.     The failure of the Director Defendants to seek stockholder reapproval of the Program, but with objective criteria for a reasonable maximum per Named Executive Officer, is irrational and constitutes waste, and it has caused and will continue to cause injury to the Company. A mandatory injunction for such reapproval and an equitable accounting are required to redress those injuries.

29.     The acts of the Named Executive Officers in distributing the false 2008 and 2009 proxy statements, in accepting non-tax-deductible compensation under the Program, and in failing to seek stockholder reapproval of the Program, but with objective criteria for a reasonable maximum per Named Executive Officer, was a breach of their duty of loyalty to the Company and its

stockholders in that these were acts and omissions that they knew or believed to be contrary to the best interests of the Company and its stockholders and as to which they had a material conflict of interest. The Named Executive Officers also thereby received improper personal benefits.

30. The acts of the Individual Defendants in distributing the false 2008 and 2009 proxy statements were not in good faith and involved a knowing violation of law.

31. The acts of the Individual Defendants in paying and accepting non-tax-deductible compensation under the Program and in failing to seek stockholder reapproval of the Program, but with objective criteria for a reasonable maximum per Named Executive Officer, were not in good faith.

32. This action is not a collusive one to confer jurisdiction on this court that it would otherwise lack.

33. Plaintiff has not made any demand upon the Company's board of directors to institute this action against the individual defendants.

34. The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders. Where, however, a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, the business judgment rule does not apply. New Jersey law and federal policy excuse demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent.

35. The board's conduct concerning the misrepresentations in and omissions from a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

(a) When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors, the board owes the stockholders a statutory duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business, but not as to questions of the board's performance of its disclosure duties, for three reasons. First, a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject. Second, although courts may not be well suited to making business decisions, courts are well suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures. Third, allegations that a proxy statement has materially false or misleading representations and omissions could raise issues as to the honesty and good faith of the directors.

(b) As with New Jersey law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in a proxy statement.

(c) At bar, the proxy statements contain materially false or misleading statements and omissions concerning the tax deductibility of payments under the Program and the standards and variables used for determining bonuses under the Program and the maximum amounts of those bonuses.

(d) The entire board is neither disinterested nor independent since every member of the board is liable for the material misstatements and omissions in the proxy statement.

36. The board's payment of non-tax-deductible compensation is also waste. As Learned Hand, Felix Frankfurter, and others have famously stated, there is no patriotic duty to arrange your

business so as to increase your taxes, because taxes are enforced exactions, not voluntary contributions. And the prospect of higher taxes is one way that the Government uses to discourage antisocial conduct. For example, the Emergency Economic Stabilization Act, Pub. Law 110-185, seeks to control corporate executive compensation at companies receiving federal assistance by providing that annual payments in excess of $500,000 are not deductible. This case concerns a corporate board of directors that has irrationally squandered millions of dollars in arranging corporate business to increase rather than reduce the Company's taxes. This misconduct has just begun, and now is the time to stop it.

37.  The court should require the Individual Defendants to account to the Company for the injury that it has sustained.

38.  The court should require the Director Defendants to seek stockholder reapproval of the Program, but with objective criteria and a reasonable maximum.

WHEREFORE, plaintiff prays for the following relief:

A.  A mandatory injunction requiring correction of the false statements in the 2008 and 2009 proxy statements;

B.  A mandatory injunction requiring stockholder reapproval of the Program with a reasonable maximum payment that is objectively determined;

C.  An injunction against payments under the Program to the Named Executive Officers;

D.  An equitable accounting in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

E.  Awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts', and attorneys' fees; and

F. Granting such other, further relief, whether similar or different, including monetary recovery, as by this Court may be deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 1, 2009

s/ Mark R. Rosen
BARRACK, RODOS & BACINE
Mark R. Rosen
Gloria Kui Melwani
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Telephone (973) 297-1484

*Attorneys for Plaintiff*

OF COUNSEL:

BARRACK, RODOS & BACINE
Alexander Arnold Gershon
1350 Broadway, Suite 1001
New York, New York 10018
Telephone (212) 688-0782

EXXON/Complaint

## **VERIFICATION**

I, **RUBY RESNIK**,, under penalties of perjury, hereby do declare that I am the plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except as to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information and belief.

Dated: Dobbs Ferry, New York
October __/__, 2009

_____
**RUBY RESNIK**