1          UNITED STATES DISTRICT COURT
           DISTRICT OF NEW JERSEY
2

3    _____
     RUBY RESNIK,
4               PLAINTIFF

5
        Vs.                          CIVIL NO.
6
                                     09-5059 (PGS)
7    MICHAEL J. BOSKIN, et al,
                DEFENDANTS
8    _____

9

10                    **AUGUST 25, 2010**
                      CLARKSON S. FISHER COURTHOUSE
11                    402 EAST STATE STREET
                      TRENTON, NEW JERSEY  08608
12

13

14
     B E F O R E:      THE HONORABLE PETER G. SHERIDAN
15                     U.S. DISTRICT COURT JUDGE
                       DISTRICT OF NEW JERSEY
16

17

18

19

20   **HEARING ON DEFENDANT'S MOTION TO DISMISS**

21

22

23                    Certified as true and correct as required
                      by Title 28, U.S.C. Section 753
24                    /S/ Francis J. Gable
                      FRANCIS J. GABLE, C.S.R., R.M.R.
25                    OFFICIAL U.S. REPORTER
                      (856) 889-4761


                *United States District Court*
                  *Trenton, New Jersey*

1

2   A P P E A R A N C E S :

3

4       BARRACK, RODOS & BACINE
        BY:  MARK R. ROSEN, ESQUIRE
5       FOR THE PLAINTIFF

6

7       DAY PITNEY, LLP
        BY:  ELIZABETH J. SHER, ESQUIRE
        FOR THE DEFENDANTS
8

9       WEIL, GOTSHAL & MANGES, LLP
        BY:  JAMES W. QUINN, ESQUIRE, and
10           ANTHONY J. ALBANESE, ESQUIRE, and
             ERIC C. HAWKINS, ESQUIRE
11      FOR THE DEFENDANTS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           THE COURT:  This is Resnik versus Boskin; is that
2   correct?

3           MR. ROSEN:  That's correct.

4           THE COURT:  May I have appearances, please.

5           MR. ROSEN:  Good afternoon, your Honor.  Mark Rosen,
6   Barrack, Rodos and Bacine, for the plaintiff.

7           THE COURT:  All right.  Good afternoon, Mr. Rosen.

8           MS. SHER:  Good afternoon, your Honor.  Elizabeth
9   Sher from Day Pitney on behalf of ExxonMobil Corporation and
10  all the individual defendants.  With me today are James Quinn
11  and Anthony Albanese, who have been admitted pro hac vice; and
12  Eric Hawkins of the Weil Gotshal law firm.  Mr. Quinn will be
13  doing the primary argument.

14          THE COURT:  All right, thank you, Ms. Sher.

15          MR. QUINN:  Good afternoon, your Honor.

16          MR. ALBANESE:  Good afternoon, your Honor.

17          THE COURT:  All right.  This is the defendant's
18  motion.

19          MR. QUINN:  Yes.  Thank you, your Honor.

20          Your Honor, this is a motion to dismiss an action
21  brought by plaintiff Ruby Resnik, a shareholder of the
22  ExxonMobil Corporation.  The case involves allegations that
23  the proxy statements of 2008 and 2009, that ExxonMobil had
24  issued to the shareholders were allegedly false --

25          THE COURT:  They didn't tell them certain

1  compensation wouldn't be deductible; is that --

2  MR. QUINN:  Yeah, the allegation is that the proxy

3  statements in 2008 and 2009, did not disclose that certain

4  executive compensation packages that had been approved years

5  earlier, were not deductible.  And we believe that as a matter

6  of law the claim is fatally flawed.  It's brought both direct

7  on behalf of Ms. Resnik, and also derivatively.  We think that

8  the whole case is made of a house of cards.

9  Its most fundamental flaw is that with regard to the

10  allegation that the statement -- that there was a failure to

11  disclose the non-deductibility, the fact is that these

12  compensation plans had been approved, in one case 13 years

13  before, the other case seven years before.  They were not the

14  subject of the proxy at all.  In fact, the proxy focused as

15  they normally do on election of directors.

16  And the law, as your Honor may well be aware and we

17  set forth in our brief, is that in order to make out a claim

18  you have to show an essential link between the alleged

19  misstatement or omission, and that which was actually being

20  voted on.

21  And there is nothing pled in this complaint, and

22  this is now their second time, second try at this, that shows

23  or demonstrates an essential link between these -- the

24  deductibility or non-deductibility of these compensation

25  plans.

 1           Fundamentally, one has to wonder what we are doing
 2   here in the first place.  And the reason for that is, and we
 3   pointed this out in our brief, it's not at all clear there's
 4   even subject matter jurisdiction here.

 5           The reality is that the IRS has never questioned the
 6   deductibility of these compensation plans; there's never been
 7   an investigation; the deductions have been taken for years;
 8   and even the plaintiff in her pleadings and brief admits that
 9   there's no way of knowing whether or not they'll ever been
10   challenged.  And under those circumstances it's hard to see
11   why we're here at all.

12           But putting that aside, even if there were subject
13   matter jurisdiction, more fundamentally the law that's set
14   forth in the Third Circuit in the *G.E. versus Cathcart* case,
15   is absolutely clear, you must plead specifically.  And under
16   the PSLRA and Rule 23(1), and of course the more -- the most
17   recent cases from the Supreme Court, *Iqbal* and the *Twombly*
18   case, you have to plead with specificity what an essential
19   link was between the alleged omissions and -- and what is
20   being voted on.

21           They haven't pled it, it doesn't exist.  The only
22   argument that they make -- this is on the direct claim, your
23   Honor; the only argument that they make is that under a tax
24   regulation, 402 -- and I'll try to avoid the arcania of the
25   tax law, that there's a requirement, so they say, that you

1   must disclose tax implications with regard to items that are

2   actually the subject matter of their proxy statements.

3           The reality is that Section 402, which we set forth

4   in our brief, doesn't say that at all.  It says that under

5   certain circumstances it may, you may want to have disclosures

6   relating to the tax treatment of items that are involved in

7   the proxy statements.

8           But here, since there was nothing being voted on

9   with regard to these plans in 2008 or 2009, they were -- had

10  been in place for, in one case 13 years as I said, in the

11  other case seven; there was -- there's no way that there was

12  any rational basis, one would say you have to talk about the

13  tax deductibility.

14          One of the things that's interesting that I don't

15  know whether we pointed this out clearly in the brief, is if

16  you actually look at what the only statement is that relates

17  at all to this in this huge proxy statement, and we've

18  attached a relevant portion which is Exhibits 3 and 4 of

19  I believe it's Mr. Albanese's affidavit; the only actual

20  statement that's made with regard to this issue at all, is

21  that the -- referring to the compensation statements, that

22  they are "designed to meet these requirements", that is the

23  deductibility, designed to meet.

24          Well, there is no issue --

25          THE COURT:  Where are we looking?

1          MR. QUINN:  We're looking -- in this case it would

2   be the attachment to the affidavit.  It's Exhibit 3, your

3   Honor.

4          THE COURT:  I have 3.

5          MR. QUINN:  And it's -- then go to page 28.

6          THE COURT:  Okay, I have that.

7          MR. QUINN:  And under tax and accounting matters, it

8   reads, the short-term awards and restricted stock grants,

9   which is the subject matter of these long previously approved

10  compensation plans, described above are designed to meet these

11  requirements.  So that ExxonMobil can continue to deduct the

12  related expenses.

13         Designed to meet.  There's not an allegation that

14  weren't designed to meet them, in fact they were designed to

15  meet them.  It's hard to understand what it is that the

16  plaintiffs would say the disclosure ought to be.  There's no

17  allegation that in fact other than a claim that anyone knew

18  that they weren't designed to meet them, or that anyone

19  thought that they weren't deductible.  The reality is they've

20  been deducted for, in one case, close to or more than a

21  decade.

22         So, it's hard to see how under these circumstances

23  they even -- they even show the critical part that they need

24  to show.  Which again, is this essential link, can't be a

25  trivial link.  The Supreme Court in the *Mills* case has made

1  clear that it has to be directly related to what's being voted

2  on.  And they have not pled a single fact to show that there's

3  any relationship between those statements and anything that's

4  actually being voted on in 2008 and 2009 in the proxy

5  statements.

6          THE COURT:  Didn't you say to me earlier that you

7  didn't vote on these things?

8          MR. QUINN:  Exactly.

9          THE COURT:  So there was no vote.

10          MR. QUINN:  There was no vote whatsoever.  This was

11  information that is being passed along -- the fact of the

12  matter is that their only argument is, as I say, this -- they

13  cite to this regulation Section 402, and from that they say

14  that therefore -- they make up a claim, which is a fascinating

15  claim, it's a right to vote claim.  They claim that Ms. Resnik

16  should have been -- had the right to vote on these plans

17  again, because under some arcane tax laws it -- there's a

18  requirement that every five years they have to be

19  reauthorized.

20          Well, there's no -- there's no private right of

21  action under tax regulation.  The issue is simply whether or

22  not there was adequate disclosure and whether that was

23  something that was false or misleading.

24          And given the fact that you have the case law with

25  regard to the essential link point, the only other allegation,

1   which obviously they haven't pled, the only other allegation

2   they've made is that -- I believe they say that the CEO or

3   chairman, Mr. Tillerson had breached his fiduciary duty by not

4   disclosing that in fact he had breached his fiduciary duty.

5          Well, the law in this Circuit, and we cited the

6   *Werner versus Werner* case, but it also goes up to the Supreme

7   Court as well; is that you don't have a proxy claim for a

8   breach of fiduciary duty.  That's a state law claim.  You

9   don't have a proxy claim for failing to disclose a breach of

10  fiduciary duty.  That's the Third Circuit law, it couldn't be

11  clearer.

12         You can't, as the case -- the *Santa Fe* case said in

13  the Supreme Court, you can't federalize a state law claim.

14  And that is not a sufficient basis for showing an essential

15  link between this non-vote that occurred, and the election of

16  directors.

17         There's a case that we also cite, which is very

18  close and it relies directly to *Cathcart* case, your Honor.

19  This is a very recent 11th Circuit case, in *Goodman Life*

20  *versus Jabil*, which is in our -- also cited in our brief;

21  which again reiterates the essential link point, that you have

22  to have an allegation linking directly and -- the vote to the

23  alleged omission.

24         And it comes up specifically in the context of the

25  of compensation plans.  In that case it was a stock option

1   plan.

2          So, it couldn't be clearer.  When *Cathcart* came down

3   in 1993, it's still the law today.  It's based on a Supreme

4   Court's decision in the *Mills* case, which says it has to be

5   something that's related.  And under these circumstances there

6   is no direct claim that Ms. Resnik can assert, and that claim

7   should be dismissed.

8          Now --

9          THE COURT:  What they're saying is that received one

10  of these I guess grants or something, restricted stock

11  grant --

12         MR. QUINN:  He was part of the executive

13  compensation, yes --

14         THE COURT:  So he benefitted by it.

15         MR. QUINN:  Yes, but that's -- this is a proxy case,

16  there is no question that he benefitted by it, that's fully

17  disclosed.  He's the CEO/chairman, he's one of the number of

18  executives that get this.  This is a disclosure case, it's not

19  a breach of fiduciary duty case.  They can't make it as the

20  *Santa Fe Industry* case in the Supreme Court said, you cannot

21  federalize a state breach of fiduciary duty claim.  It's

22  not -- it's not a claim under the federal securities law.

23         THE COURT:  So, if you're right, all the parties --

24  they're not diverse; right?

25         MR. QUINN:  Yeah, that's correct, the case would

1  have to go.

2          And for the same reason I'll just briefly mention

3  the derivative claim, because obviously if there' no direct

4  claim, there's no derivative claim.  But, in addition there's

5  also a fundamental flaw in their derivative claim, because

6  there's a failure to make demand and a failure to show that

7  demand would be futile.

8          The only argument that the plaintiffs come up with,

9  because they concede there's not an issue of

10  disinterestedness, there's not an issue of -- or lack of

11  disinterestedness or independence.  They focus on the second

12  part of the test, and the only argument they come up with is

13  they essentially say that any proxy violation is exempted from

14  the demand requirement.

15          Now, the law that has developed over the last few

16  years, indeed there are two cases brought by the lawyers for

17  this very plaintiff, where they made that same argument; one

18  in the Second Circuit, and one in California, literally within

19  the last -- last eight or nine months.  Decisions have come

20  down and said no, there's no special exemption from the demand

21  requirement because there's an allegation of proxy fraud.

22          And the case law now is clear -- they cite to some

23  old cases that have basically been distinguish or ignored.  It

24  couldn't be clearer that given the fact that, as your Honor is

25  aware, derivative litigation is really a litigation on behalf

1  of the corporation, the case law is clear that in the first

2  instance, absent some other showing, the board should be

3  allowed to make a decision.  They're the ones who are closest

4  to it, they're the ones who can weigh the benefits and burdens

5  of bringing litigation, and make a determination as to whether

6  or not it's proper to bring that litigation.

7          So, the direct claim fails, because as I made clear

8  there is no essential link.  There's no ripeness here, there's

9  no subject matter jurisdiction, nothing's happened; and the

10  derivative claim also fails for those reasons, and because

11  they failed to make an adequate demand.

12          THE COURT:  Okay, thank you.

13          MR. QUINN:  Thank you, your Honor.

14          THE COURT:  Mr. Rosen?

15          MR. ROSEN:  Thank you very much, your Honor.  And I

16  want to begin by thanking you for rescheduling this, from the

17  problem we had two weeks ago.

18          THE COURT:  No problem.

19          MR. ROSEN:  There are a number of points I'd like to

20  address, but first I'd like to do is put this action into

21  perspective.  Congress in enacting Section 162(m) specifically

22  said, and we cited the legislative history relevant to it,

23  that this is an act of corporate government, it's not simply a

24  matter of taxation.

25          And it said if a public company's going to provide

1    compensation to executives in excess of a million dollars, it

2    would not be deductible unless, and then we get into what are

3    the requirements.

4            One of the requirements is there have to be

5    objective criteria.  The period of judgment has to be for at

6    least a year, the criteria have to be set no later than 90

7    days into that one year or longer period, and that the people

8    exercising that power the compensation committee do not have

9    discretion.  You have to meet the requirements.

10           And I respectfully submit, that my learned colleague

11   has not entirely laid out the facts relevant to that.  First

12   of all on the issue of jurisdiction we pled both federal

13   question jurisdiction on the federal claim, plus diversity

14   jurisdiction.

15           Plaintiff is a citizen of New York, all the

16   defendants are citizens of jurisdiction other than New York.

17   So independent of the federal question I'll address in a

18   moment why I believe the federal question is sustainable,

19   there is diversity jurisdiction as well as 1367 pendant claim

20   jurisdiction.

21           THE COURT:  Okay.

22           MR. ROSEN:  We asserted three claims; the first two

23   are the direct claim, the claim under 14(a) of the 34 Act

24   relating to the proxy statement, and the statement that these

25   payments were deductible when we contend that they are not.

1    The second is a -- also a direct claim for failure to seek

2    stockholder approval, and let me explain what that is.

3           The statute says if the compensation committee has

4    the authority to change the criteria after it's been approved

5    by the shareholders, then at least every five years they have

6    to seek re-approval.  Mr. Quinn referred to the fact that --

7           THE COURT:  I'm sorry; there's someone talking out

8    there, and they're interrupting the conversation.

9           MR. ROSEN:  I'm sorry.  Mr. Quinn referred to the

10   fact that there were plans approved in '97 and 2003.  Assume

11   for the purpose of this discussion just for the moment that

12   both the plans were valid.  Then because we've alleged and the

13   documents attached to Mr. Gershon's declaration show the

14   relevant documents concerning the public statement, the public

15   offering documents or the proxy statements, that the

16   compensation committee had the authority to change the

17   criteria.  Then at a minimum by the year 2008 the 2003 plan

18   was subject to re-approval, and the '97 claim was subject to

19   re-approval at least twice.

20          Now, I have to apologize for maybe burying the lead,

21   but I was reviewing the materials this morning, and I'm

22   looking at Mr. Gershon's declaration, Exhibit 2, which is the

23   2010 proxy, for Exxon.  And when I read it this morning

24   something really jumped out at me that really explains in a

25   nutshell how they're not complying.

1            And looking at the page that says on the bottom page

2   38, tax matters.

3            THE COURT:  Let me get there.  So it's Exhibit 2 --

4            MR. ROSEN:  Exhibit 2 to Mr. Gershon's declaration,

5   page 38.

6            THE COURT:  Gershon --

7            MR. ROSEN:  Gershon, my partner.  On the top it says

8   page 70 of 71.

9            THE COURT:  I've got to find that.

10            Okay.

11            MR. ROSEN:  It's page 38 on the bottom, on the top

12   it says page 70 of 71 where the clerk's office automatically

13   stamps the pages.

14            THE COURT:  I got it.  Okay.

15            MR. ROSEN:  All right.  Do you see the heading, your

16   Honor, where it says tax matters?

17            THE COURT:  Yes.

18            MR. ROSEN:  The next sentence says, U.S. income tax

19   law limits the amount ExxonMobil can deduct for compensation

20   paid to the CEO and the other three most highly paid

21   executives and then it goes on.

22            Then in the first paragraph below that it talks

23   about the plans.  And it goes on to say, if positive earnings

24   are achieved individual awards to these executives are subject

25   to a maximum cap of zero point two percent of earnings in the

1   case of short-term awards, and zero point five percent of

2   earnings in the case of long-term awards, and then it talks

3   about restricted stock awards.

4          Then here's the amazing sentence or two sentences

5   that absolutely blew me away; these terms have been

6   established to meet tax regulations and do not -- underscore

7   the word not -- represent the actual operational goals we

8   expect our senior executives to achieve; actual board levels

9   are determined based on subjective consideration of all the

10  factors previously discussed in this report, and have been

11  significantly less than the shareholder approved caps.

12         Now, we filed suit before the 2010 proxy was issued,

13  but this confirms the basic allegation, that because Section

14  162(m), and the regulations that the Internal Revenue Service

15  issues implementing it say that criteria must be objective, it

16  must not be discretionary.  And they've basically conceded

17  that they're not objective and they're entirely discretionary.

18         And as I understand the defendant's scheme -- I

19  don't mean to say it in a disparaging way, but as I understand

20  their system, the cap of one half of one percent I'll get into

21  a moment of what it's one half of one percent of --

22         THE COURT:  Why do you say they're not actual,

23  because it says subjective?

24         MR. ROSEN:  Subjective.

25         THE COURT:  Okay.  Well, that doesn't mean there's

1   not a standard; right?

2           MR. ROSEN:  That's right, but the statute says and

3   the regulations the IRS issued pursuant to Section 162(m)

4   specifically say the criteria must be objective.  There must

5   be no discretion.  In the words of the regulations I believe

6   it says, an outside observer must be able to determine whether

7   or not somebody has satisfied these requirements.

8           And we go back and forth about -- in the briefs

9   about whether they need to actually disclose their criteria.

10  But having conceded that it's a subjective test, that the

11  committee has discretion to change the number, they've even

12  effect conceded now, perhaps in response to this lawsuit, that

13  they're not compliance with 162(m).

14          And let me explain how I think their scheme works.

15  And I don't mean scheme in a derogatory sense.  You take one

16  half of one percent, they use the term net income of earnings

17  -- net income term they use, I don't remember the exact term I

18  have it in my notes.  As of last year that was one half of

19  one percent would be over four hundred million.  And then they

20  choose a number below that.

21          So it's not like the target -- not like if you meet

22  this criteria you get four hundred million, it's we'll give

23  something less than four hundred million and we exercise our

24  discretion in doing that.  That's exactly contrary to 162(m).

25              And all of that is background to the claims in this

1    case, the 14(a) claim, the claim for shareholder voting, and

2    that in essence, your Honor, says that -- the law both in New

3    Jersey and elsewhere recognizes that the infringement of a

4    shareholder's right to vote is sufficient to state a claim.

5    That's the *Penn-Texas* case by the Chancery Division; and

6    defendants have cited a number of Delaware cases, one that

7    they didn't focus on is *Tri-Star Pictures* which recognized a

8    claim for wrongful deprivation for the right to cast an

9    informed vote.

10           And of course the entire policy underlying Section

11   14(a) is that shareholders are entitled to disclosure of

12   material information exercising their franchise.

13           Now, Mr. Quinn has argued at length that the 14(a)

14   claim is fatally flawed for lack of showing a link between the

15   misstatement and some shareholder action.  The shareholder

16   action in 2008 and 2009 was election of directors.

17           And the regulations state, we cite them in the brief

18   and I can give your Honor the citation if you require it, that

19   one of the things that must be included in the disclosure and

20   the proxies is what they call a CDA, Compensation Discussion

21   Analysis.  And they're specifically required to discuss the

22   tax and accounting treatment of the compensation that they're

23   giving.

24           So, we have a situation where they're telling

25   shareholders you should vote for the slate of directors which

1   includes the CEO who will benefit from this, without

2   disclosing that in fact the representation that the system is

3   designed to be tax deductible is not accurate.

4          We think that's clearly violation of 14(a).  And

5   it's also violation of the right to an informed vote.

6          Now, the third claim is the derivative claim.  And

7   that's the claim for breach of fiduciary duty and waste.  Now,

8   the New Jersey Supreme Court has confirmed that waste is the

9   derivative claim in the Straussenberg (ph)case.  Courts have

10  certainly recognized claim of waste based on executive

11  compensation, one is the *Citigroup* case decided by the

12  chancery court in Delaware last year.

13         And Judge Rifkind, later the famous named partner

14  Paul, Weiss, Rifkind, Wharton and Garrison when he was in your

15  situation as a district judge, recognized the derivative claim

16  where the directors caused the corporation to incur excessive

17  tax liability for the benefit of the people who get the stock

18  options and that's the *Truncale* case, T-r-u-n-c-a-l-e, versus

19  Universal Pictures decided in 1948.

20         Now, in this case there is no reason for the

21  defendants to adopt the system to pay their executives this

22  compensation in a way that's not deductible, when they could

23  have designed an equally effective system that would make it

24  deductible.

25         So for example, if I'm a fiduciary and I'm an

1  executor of someone's estate and I know I have to hold funds

2  for a year or two until the estate's ready to be wrapped up,

3  and I have a choice of two identical investments, guaranteed

4  CDs, insured, no risk it's within the insurance limit, and one

5  pays one percent a year and one pays no percent a year, I

6  respectfully submit I would be breaching my fiduciary duty if

7  I choose the one that pays no percent a year.

8          But in effect that's the equivalent of what the

9  directors in Exxon did.  They created a system where they're

10 saying we claim that we're concerned with the incentive

11 compensation, and we claim that we're going to compensate

12 based on criteria, but instead they said we're going to set

13 the ceiling as high as the moon, four hundred million

14 effectively, but we'll give some number less than that in our

15 subjective judgment and as a result it qualifies.

16         In fact it does not qualify.  And I would

17 respectfully submit that they have not shown that it would

18 qualify.

19         Now, the SEC has said that compensation arrangements

20 including tax treatment is something material.  The Third

21 Circuit in *Shaev versus Saper* said in a similar case, that

22 information about the deductibility of compensation is

23 material, and if there's a misrepresentation it can be

24 actionable.

25         And when we talk about what the law is whether this

1   is actionable or isn't, Mr. Quinn said well I cited a couple

2   of very old cases and the law has changed.  Setting aside

3   *Shaev versus Saper*, which is a Third Circuit decision which

4   said this is material, we have the decision of then District

5   now Third Circuit Judge D. Brooks Smith in the *Westinghouse*

6   case, where he specifically said -- and this isn't talking

7   about derivative claims; you cannot subject a derivative claim

8   relating to compliance or noncompliance with disclosure rules

9   to the business judgment rule, it is not appropriate, because

10  that trumps it.

11          If I -- and now I'm speaking my words not Judge

12  Smith's words; if I'm an executive of a company and I have a

13  contract with someone else to buy wheat or sell wheat whatever

14  it is, it's certainly a business decision on my part to say

15  the market has changed I'll perform or I'll breach, and if I

16  breach I'll recognize the consequences.

17          But what Judge Smith was saying in *Westinghouse* and

18  what the other cases we cited said, there's no discretion in

19  complying or not complying with the federal securities laws.

20  And because there's no discretion it is not an exercise of

21  business judgment.

22          Now, what the New Jersey Supreme Court said in the

23  *PSE&G* case, said there are two alternative ways to show

24  there's no demand requirement, to be applied before you can

25  bring a derivative suit.  One is the issue of whether the

1 directors are independent and disinterested.  We're not

2 asserting that, set that aside.

3        But the other and the Supreme Court said in *PSE&G* as

4 in Delaware the law is the same, you only need to meet one of

5 the other requirements you don't need to meet both, if you can

6 show the decision was not an exercise of business judgment

7 that's committed to the directors.

8        And as Judge Smith explained in *Westinghouse* and as

9 the other cases have explained, there is no discretion that

10 says comply with the securities laws versus don't comply with

11 the securities laws and therefore there is no reason to

12 require demand.

13        And that's precisely what differentiates this case

14 from the cases they're relying upon, because there is no

15 discretion.  And as I hoped to explain earlier, that's why

16 they were required to make these disclosures.

17        And by the way, Judge Smith isn't alone there.

18 Defendants cite a lot of Delaware law, there are at least two

19 cases, *Tri-Star Pictures* decided in 1990, *Anderson Clayton*

20 decided in 1986, both of which said that the business judgment

21 rule does not apply to the question whether shareholders had

22 been given appropriate information.

23        So there's I would respectfully submit broad

24 support.  So when the court is saying what at the governing

25 law, there is no Supreme Court precedent that controls.  But

1    there is the Third Circuit decision in *Shaev versus Saper*

2    which says the tax treatment of executive compensation is

3    material to shareholders.  And we have Circuit Judge Smith's

4    decision while he was still a district judge in *Westinghouse*

5    that said, this should not be subject to demand requirement,

6    which is consistent with the others.

7         And then of course there's a Second Circuit case --

8    and also by the way there's a -- a case from your colleague in

9    Delaware, *Seinfeld versus Barrett*, which also said the same

10   thing.  And there's a Second Circuit case, The *Galef*,

11   G-a-l-e-f, case, where the court said the goal of Section

12   14(a) the communications from management be accurate and

13   complete as to all material facts is a vital one; its

14   achievement would quite clearly be frustrated if a director

15   who was made a defendant in a derivative action for providing

16   inadequate information -- and goes on -- was permitted to

17   cause the dismissal of that action based on his judgment that

18   its pursuit wasn't in the best interest of the corporation.

19        And it concludes; therefore, federal policy prevents

20   the summary dismissal of these claims based upon business

21   judgment.  So, all those reasons are there.

22        I just want to address a couple other points unless

23   your Honor has questions.

24        THE COURT:  I don't have any questions.

25        MR. ROSEN:  Well, if I could just make -- respond to

1    a couple of Mr. Quinn's points.

2            THE COURT:  You may.

3            MR. ROSEN:  He makes the argument the claim is

4    either not ripe or not timely, in fact defendants make both

5    arguments.  They say the claim as to the 2008 proxy is

6    untimely, because it's more than a year after the issuance of

7    the 2008 prospectus; and then literally in the next breath

8    they say, and it's not ripe to sue because there's been no IRS

9    determination, no resolution of the tax issue.

10           But in fact, as the judge said in *Westinghouse* there

11   is no requirement, and in the other case that we cited before

12   your Honor, there is no requirement that there be a final

13   adjudication by the IRS for this to be material --

14           THE COURT:  That's fine, I understand that.

15           MR. ROSEN:  And if I could just respond to a couple

16   other final points he made.  So, the essential link argument

17   is that they ask shareholders to vote for directors, they

18   didn't disclose this information.

19           Mr. Quinn says well there's no duty to accuse

20   yourself of breach of fiduciary duty.  There's a case that

21   directly addresses it, that unfortunately I'm quite familiar

22   with because I was a defense counsel and it's called

23   *Craftmatic*, decided by the Third Circuit in 1989 cited in the

24   papers.

25           And *Craftmatic* says -- Craftmatic was a company, a

**1**  consumer goods company they sold beds and chairs on late night

**2**  TV.  And they were under investigation by various state

**3**  attorneys general.

**4**          And we the defendants in that case made the exact

**5**  same argument Mr. Quinn made, you can't dress up a breach of

**6**  fiduciary duty claim into a 14(a) suit of clothing was I think

**7**  the phrase that was common in those days, more than 20 years

**8**  ago.

**9**          But what the Third Circuit said is, you don't need

**10**  to accuse yourself of a breach of fiduciary duty, but you do

**11**  need to disclose the facts, and if the facts are you're under

**12**  investigation you should have disclosed that.

**13**          So Mr. Quinn is right, Mr. Tillerson and the other

**14**  directors weren't required to stand up and say we're breaking

**15**  the law, but they were required to say the plan is not in

**16**  compliance.  They weren't required to say we're looting the

**17**  company, but they were required to say the plan is not in

**18**  compliance.  And they didn't do it.

**19**          He also --

**20**          THE COURT:  Wasn't in compliance with what?

**21**          MR. ROSEN:  With Section 162(m) of the Internal

**22**  Revenue Code and the regulations --

**23**          THE COURT:  So they had to be re-approved every five

**24**  years.

**25**          MR. ROSEN:  Every five years.  So at a minimum even

1    if these payments were made pursuant to the 2003 plan, by 2008

2    it was due for renewal, they didn't do it in 2008 they didn't

3    do it 2009 and they didn't do it in 2010 as reflected in that

4    quotation I was referring to.

5            He also cited a California case, but in California

6    the demand requirement was by statutory mandate, and that's

7    very different from the situation here.

8            So, we think we've stated a claim under 14(a), we

9    stated a claim for the right to vote, and we certainly state a

10   claim for breach of fiduciary duty and waste, because they've

11   subjected the company to significant tax liability when they

12   could have easily avoided it.

13           Unless your Honor has any other questions that's --

14           THE COURT:  No, I don't.  I've been through the

15   papers once or twice, and I need to do some more reviewing and

16   read some of the cases that were cited to me.  And after that

17   I'll be able to make a decision.

18           MR. ROSEN:  Thank you very much, your Honor.

19           THE COURT:  Mr. Quinn, do you have a response?

20           MR. QUINN:  Just two minutes, your Honor.

21           THE COURT:  At the most.

22           MR. QUINN:  Absolutely the most.

23           First, on the demand point, it's curious that Mr.

24   Rosen doesn't cite to the two cases where his firm lost this

25   very issue, the Second Circuit in California.  But we'll move

1   on.

2            THE COURT:  All right.

3            MR. QUINN:  On this deductibility point, this is --

4   this is the classic putting the rabbit -- I think your Honor

5   already got this, the putting the rabbit in the hat; saying

6   it's not deductible, you didn't disclose it.  Well, no one's

7   ever said it's not deductible, they don't have a private right

8   of action under the IRS rules and regs, this is a disclosure

9   case.

10           And the last point, and as I said, two minutes or

11  less, they cite to a case in the Third Circuit, the *Shaev*

12  case, well, that actually proves our exact point.  In that

13  case, what was being voted on was the compensation plans.  And

14  in that case there was an essential link between the voting

15  and the disclosures.  Exactly the opposite of what we have

16  here.

17           These were compensation plans as your Honor already

18  knows that were voted on 13 and seven years ago.  There's no

19  essential link, the law could not be clearer.  This should be

20  dismissed, your Honor.

21           THE COURT:  All right.  Okay.  So, I've listened to

22  the arguments, and it's going to take me a few weeks to

23  respond.  So, what I wanted to know at the present time, is

24  there any discovery going on in this case?

25           MR. QUINN:  No, your Honor, because the PSLRA

1   requires that until the motion to dismiss is decided, the

2   discovery is stayed.

3          MR. ROSEN:  Your Honor, just to qualify that

4   slightly, Judge Salas when she had our initially discovery

5   conference with us had set up a discovery schedule, over

6   defendant's objection based on the PSLRA.  And then defendants

7   appealed it to your Honor, and based upon that we were -- it

8   was our understanding your Honor had informally advised us

9   that you considered the stay.

10          We would like to go forward with some very focused

11   discovery, we think it's appropriate looking at their

12   compensation committee, looking at their board, minutes and

13   the compensation minutes, any compensation consultants.  We

14   think in some form this action is going to proceed and we

15   ought to be focused on those issues and we'd like to proceed

16   with discovery, the Court has authority to lift the stay, we

17   think it would be appropriate here.

18          THE COURT:  All right.  So, I'll take a look at the

19   stay at the present time.  If I find that -- what type of

20   discovery you wanted to do, you said it's focused?

21          MR. ROSEN:  Very much so, your Honor, we'd like any

22   -- the reports and any communications with any compensation

23   consultants; we'd like the minutes and any communications with

24   the compensation committee; similarly minutes and any

25   communications with the board and obviously with Mr. Tillerson

1   or others in the administration of Exxon about these issues.

2           THE COURT:  Okay.

3           MR. ROSEN:  I don't want a grand inquisition I don't

4   need it, but this is very focused --

5           THE COURT:  I just need -- my own feeling is I

6   always like the cases to move on.  If I could get some

7   discovery going over the next few weeks before I make a

8   decision, it might be worthwhile in the long run.

9           MR. ROSEN:  I agree, your Honor.

10          MS. SHER:  Your Honor, with all respect, given your

11  Honor's prior ruling consistent with the statute that

12  discovery would be stayed, if you're going to consider lifting

13  the statutory stay, we'd like the opportunity to address that

14  before it's just ordered.  Because we haven't had --

15          THE COURT:  I'll probably call on the phone and

16  request for comments.

17          MS. SHER:  That's fine, your Honor.

18          MR. ROSEN:  Thank you, your Honor.

19          MR. QUINN:  Thank you, your Honor.

20          THE COURT:  Thank you for coming in.

21          THE DEPUTY CLERK:  All rise.

22          (Matter concluded.)

23

24

25

**'** [ ]

**'97** [2] - 14:10, 14:18

**/**

**/S** [1] - 1:24

**0**

**08608** [1] - 1:11
**09-5059** [1] - 1:6

**1**

**11th** [1] - 9:19
**13** [3] - 4:12, 6:10, 27:18
**1367** [1] - 13:19
**14(a** [7] - 13:23, 18:1, 18:11, 18:13, 23:12, 25:6, 26:8
**14(a)** [1] - 19:4
**162(m** [4] - 12:21, 16:14, 17:3, 25:21
**162(m)** [2] - 17:13, 17:24
**1948** [1] - 19:19
**1986** [1] - 22:20
**1989** [1] - 24:23
**1990** [1] - 22:19
**1993** [1] - 10:3

**2**

**2** [3] - 14:22, 15:3, 15:4
**20** [1] - 25:7
**2003** [3] - 14:10, 14:17, 26:1
**2008** [10] - 3:23, 4:3, 6:9, 8:4, 14:17, 18:16, 24:5, 24:7, 26:1, 26:2
**2009** [6] - 3:23, 4:3, 6:9, 8:4, 18:16, 26:3
**2010** [4] - 1:10, 14:23, 16:12, 26:3
**23(1** [1] - 5:16
**25** [1] - 1:10
**28** [2] - 1:23, 7:5

**3**

**3** [3] - 6:18, 7:2, 7:4
**34** [1] - 13:23

**38** [3] - 15:2, 15:5, 15:11

**4**

**4** [1] - 6:18
**402** [4] - 1:11, 5:24, 6:3, 8:13

**7**

**70** [2] - 15:8, 15:12
**71** [2] - 15:8, 15:12
**753** [1] - 1:23

**8**

**856** [1] - 1:25
**889-4761** [1] - 1:25

**9**

**90** [1] - 13:6

**A**

**able** [2] - 17:6, 26:17
**absent** [1] - 12:2
**absolutely** [2] - 5:15, 16:5
**Absolutely** [1] - 26:22
**accounting** [2] - 7:7, 18:22
**accurate** [2] - 19:3, 23:12
**accuse** [2] - 24:19, 25:10
**achieve** [1] - 16:8
**achieved** [1] - 15:24
**achievement** [1] - 23:14
**act** [1] - 12:23
**Act** [1] - 13:23
**action** [9] - 3:20, 8:21, 12:20, 18:15, 18:16, 23:15, 23:17, 27:8, 28:14
**actionable** [2] - 20:24, 21:1
**actual** [4] - 6:19, 16:7, 16:8, 16:22
**addition** [1] - 11:4
**address** [4] - 12:20, 13:17, 23:22, 29:13
**addresses** [1] - 24:21
**adequate** [2] - 8:22,

12:11
**adjudication** [1] - 24:13
**administration** [1] - 29:1
**admits** [1] - 5:8
**admitted** [1] - 3:11
**adopt** [1] - 19:21
**advised** [1] - 28:8
**affidavit** [2] - 6:19, 7:2
**afternoon** [5] - 3:5, 3:7, 3:8, 3:15, 3:16
**ago** [3] - 12:17, 25:8, 27:18
**agree** [1] - 29:9
**al** [1] - 1:7
**ALBANESE** [2] - 2:10, 3:16
**Albanese** [1] - 3:11
**Albanese's** [1] - 6:19
**allegation** [9] - 4:2, 4:10, 7:13, 7:17, 8:25, 9:1, 9:22, 11:21, 16:13
**allegations** [1] - 3:22
**alleged** [4] - 4:18, 5:19, 9:23, 14:12
**allegedly** [1] - 3:24
**allowed** [1] - 12:3
**alone** [1] - 22:17
**alternative** [1] - 21:23
**amazing** [1] - 16:4
**amount** [1] - 15:19
**Analysis** [1] - 18:21
**Anderson** [1] - 22:19
**ANTHONY** [1] - 2:10
**Anthony** [1] - 3:11
**apologize** [1] - 14:20
**appealed** [1] - 28:7
**appearances** [1] - 3:4
**applied** [1] - 21:24
**apply** [1] - 22:21
**appropriate** [4] - 21:9, 22:22, 28:11, 28:17
**approval** [4] - 14:2, 14:6, 14:18, 14:19
**approved** [7] - 4:4, 4:12, 7:9, 14:4, 14:10, 16:11, 25:23
**arcane** [1] - 8:17
**arcania** [1] - 5:24
**argued** [1] - 18:13
**argument** [10] - 3:13, 5:22, 5:23, 8:12, 11:8, 11:12, 11:17, 24:3, 24:16, 25:5
**arguments** [2] - 24:5, 27:22
**arrangements** [1] -

20:19
**aside** [3] - 5:12, 21:2, 22:2
**assert** [1] - 10:6
**asserted** [1] - 13:22
**asserting** [1] - 22:2
**Assume** [1] - 14:10
**attached** [2] - 6:18, 14:13
**attachment** [1] - 7:2
**attorneys** [1] - 25:3
**AUGUST** [1] - 1:10
**authority** [3] - 14:4, 14:16, 28:16
**automatically** [1] - 15:12
**avoid** [1] - 5:24
**avoided** [1] - 26:12
**awards** [5] - 7:8, 15:24, 16:1, 16:2, 16:3
**aware** [2] - 4:16, 11:25

**B**

**BACINE** [1] - 2:4
**Bacine** [1] - 3:6
**background** [1] - 17:25
**BARRACK** [1] - 2:4
**Barrack** [1] - 3:6
**Barrett** [1] - 23:9
**based** [8] - 10:3, 16:9, 19:10, 20:12, 23:17, 23:20, 28:6, 28:7
**basic** [1] - 16:13
**basis** [2] - 6:12, 9:14
**beds** [1] - 25:1
**begin** [1] - 12:16
**behalf** [3] - 3:9, 4:7, 11:25
**below** [2] - 15:22, 17:20
**benefit** [2] - 19:1, 19:17
**benefits** [1] - 12:4
**benefitted** [2] - 10:14, 10:16
**best** [1] - 23:18
**between** [7] - 4:18, 4:23, 5:19, 8:3, 9:15, 18:14, 27:14
**blew** [1] - 16:5
**board** [4] - 12:2, 16:8, 28:12, 28:25
**Boskin** [1] - 3:1
**BOSKIN** [1] - 1:7
**bottom** [2] - 15:1, 15:11

**breach** [11] - 9:8, 9:9, 10:19, 10:21, 19:7, 21:15, 21:16, 24:20, 25:5, 25:10, 26:10
**breached** [2] - 9:3, 9:4
**breaching** [1] - 20:6
**breaking** [1] - 25:14
**breath** [1] - 24:7
**brief** [7] - 4:17, 5:3, 5:8, 6:4, 6:15, 9:20, 18:17
**briefly** [1] - 11:2
**briefs** [1] - 17:8
**bring** [2] - 12:6, 21:25
**bringing** [1] - 12:5
**broad** [1] - 22:23
**Brooks** [1] - 21:5
**brought** [3] - 3:21, 4:6, 11:16
**burdens** [1] - 12:4
**burying** [1] - 14:20
**business** [6] - 21:9, 21:14, 21:21, 22:6, 22:20, 23:20
**buy** [1] - 21:13
**BY** [3] - 2:4, 2:7, 2:9

**C**

**C.S.R** [1] - 1:24
**California** [4] - 11:18, 26:5, 26:25
**cannot** [2] - 10:20, 21:7
**cap** [2] - 15:25, 16:20
**caps** [1] - 16:11
**cards** [1] - 4:8
**case** [52] - 3:22, 4:8, 4:12, 4:13, 5:14, 5:18, 6:10, 6:11, 7:1, 7:20, 7:25, 8:24, 9:6, 9:12, 9:17, 9:18, 9:19, 9:25, 10:4, 10:15, 10:18, 10:19, 10:20, 10:25, 11:22, 12:1, 16:1, 16:2, 18:1, 18:5, 19:11, 19:18, 19:20, 20:21, 21:6, 21:23, 22:13, 23:7, 23:8, 23:10, 23:11, 24:11, 24:20, 25:4, 26:5, 27:9, 27:11, 27:12, 27:13, 27:14, 27:24
**cases** [12] - 5:17, 11:16, 11:23, 18:6, 21:2, 21:18, 22:9, 22:14, 22:19, 26:16, 26:24, 29:6

cast [1] - 18:8
Cathcart [3] - 5:14, 9:18, 10:2
caused [1] - 19:16
CDA [1] - 18:20
CDs [1] - 20:4
ceiling [1] - 20:13
CEO [3] - 9:2, 15:20, 19:1
CEO/chairman [1] - 10:17
certain [3] - 3:25, 4:3, 6:5
certainly [3] - 19:10, 21:14, 26:9
Certified [1] - 1:23
chairman [1] - 9:3
chairs [1] - 25:1
challenged [1] - 5:10
Chancery [1] - 18:5
chancery [1] - 19:12
change [3] - 14:4, 14:16, 17:11
changed [2] - 21:2, 21:15
choice [1] - 20:3
choose [2] - 17:20, 20:7
Circuit [16] - 5:14, 9:5, 9:10, 9:19, 11:18, 20:21, 21:3, 21:5, 23:1, 23:3, 23:7, 23:10, 24:23, 25:9, 26:25, 27:11
circumstances [4] - 5:10, 6:5, 7:22, 10:5
citation [1] - 18:18
cite [7] - 8:13, 9:17, 11:22, 18:17, 22:18, 26:24, 27:11
cited [10] - 9:5, 9:20, 12:22, 18:6, 21:1, 21:18, 24:11, 24:23, 26:5, 26:16
Citigroup [1] - 19:11
citizen [1] - 13:15
citizens [1] - 13:16
CIVIL [1] - 1:5
claim [48] - 4:6, 4:17, 5:22, 7:17, 8:14, 8:15, 9:7, 9:8, 9:9, 9:13, 10:6, 10:21, 10:22, 11:3, 11:4, 11:5, 12:7, 12:10, 13:13, 13:19, 13:23, 14:1, 14:18, 18:1, 18:4, 18:8, 18:14, 19:6, 19:7, 19:9, 19:10, 19:15, 20:10, 20:11, 21:7, 24:3,

24:5, 25:6, 26:8, 26:9, 26:10
claims [4] - 13:22, 17:25, 21:7, 23:20
CLARKSON [1] - 1:10
classic [1] - 27:4
Clayton [1] - 22:19
clear [6] - 5:3, 5:15, 8:1, 11:22, 12:1, 12:7
clearer [4] - 9:11, 10:2, 11:24, 27:19
clearly [3] - 6:15, 19:4, 23:14
CLERK [1] - 29:21
clerk's [1] - 15:12
close [2] - 7:20, 9:18
closest [1] - 12:3
clothing [1] - 25:6
Code [1] - 25:22
colleague [2] - 13:10, 23:8
coming [1] - 29:20
comments [1] - 29:16
committed [2] - 22:7
committee [6] - 13:8, 14:3, 14:16, 17:11, 28:12, 28:24
common [1] - 25:7
communications [4] - 23:12, 28:22, 28:23, 28:25
company [5] - 21:12, 24:25, 25:1, 25:17, 26:11
company's [1] - 12:25
compensate [1] - 20:11
compensation [28] - 4:1, 4:4, 4:12, 4:24, 5:6, 6:21, 7:10, 9:25, 10:13, 13:1, 13:8, 14:3, 14:16, 15:19, 18:22, 19:11, 19:22, 20:11, 20:19, 20:22, 23:2, 27:13, 27:17, 28:12, 28:13, 28:22, 28:24
Compensation [1] - 18:20
complaint [1] - 4:21
complete [1] - 23:13
compliance [5] - 17:13, 21:8, 25:16, 25:18, 25:20
comply [2] - 22:10
complying [3] - 14:25, 21:19
concede [1] - 11:9
conceded [3] - 16:16,

17:10, 17:12
concerned [1] - 20:10
concerning [1] - 14:14
concluded [1] - 29:22
concludes [1] - 23:19
conference [1] - 28:5
confirmed [1] - 19:8
confirms [1] - 16:13
Congress [1] - 12:21
consequences [1] - 21:16
consider [1] - 29:12
consideration [1] - 16:9
considered [1] - 28:9
consistent [2] - 23:6, 29:11
consultants [2] - 28:13, 28:23
consumer [1] - 25:1
contend [1] - 13:25
context [1] - 9:24
continue [1] - 7:11
contract [1] - 21:13
contrary [1] - 17:24
controls [1] - 22:25
conversation [1] - 14:8
corporate [1] - 12:23
corporation [3] - 12:1, 19:16, 23:18
Corporation [2] - 3:9, 3:22
correct [4] - 1:23, 3:2, 3:3, 10:25
counsel [1] - 24:22
couple [4] - 21:1, 23:22, 24:1, 24:15
course [5] - 5:16, 18:10, 23:7
COURT [43] - 1:1, 1:15, 3:1, 3:4, 3:7, 3:14, 3:17, 3:25, 6:25, 7:4, 7:6, 8:6, 8:9, 10:9, 10:14, 10:23, 12:12, 12:14, 12:18, 13:21, 14:7, 15:3, 15:6, 15:9, 15:14, 15:17, 16:22, 16:25, 23:24, 24:2, 24:14, 25:20, 25:23, 26:14, 26:19, 26:21, 27:2, 27:21, 28:18, 29:2, 29:5, 29:15, 29:20
court [3] - 19:12, 22:24, 23:11
Court [10] - 5:17, 7:25, 9:7, 9:13, 10:20, 19:8, 21:22, 22:3,

22:25, 28:16
Court's [1] - 10:4
COURTHOUSE [1] - 1:10
Courts [1] - 19:9
Craftmaic [3] - 24:23, 24:25
created [1] - 20:9
criteria [9] - 13:5, 13:6, 14:4, 14:17, 16:15, 17:4, 17:9, 17:22, 20:12
critical [1] - 7:23
curious [1] - 26:23

D

DAY [1] - 2:6
days [2] - 13:7, 25:7
decade [1] - 7:21
decided [6] - 19:11, 19:19, 22:19, 22:20, 24:23, 28:1
decision [10] - 10:4, 12:3, 21:3, 21:4, 21:14, 22:6, 23:1, 23:4, 26:17, 29:8
Decisions [1] - 11:19
declaration [3] - 14:13, 14:22, 15:4
deduct [2] - 7:11, 15:19
deducted [1] - 7:20
deductibility [8] - 4:11, 4:24, 5:6, 6:13, 6:23, 20:22, 27:3
deductible [10] - 4:1, 4:5, 7:19, 13:2, 13:25, 19:3, 19:22, 19:24, 27:6, 27:7
deductions [1] - 5:7
defendant [1] - 23:15
defendant's [3] - 3:17, 16:18, 28:6
DEFENDANT'S [1] - 1:20
Defendants [1] - 22:18
defendants [7] - 3:10, 13:16, 18:6, 19:21, 24:4, 25:4, 28:6
DEFENDANTS [3] - 1:7, 2:7, 2:11
defense [1] - 24:22
Delaware [5] - 18:6, 19:12, 22:4, 22:18, 23:9
demand [11] - 11:6, 11:7, 11:14, 11:20,

12:11, 21:24, 22:12, 23:5, 26:6, 26:23
demonstrates [1] - 4:23
deprivation [1] - 18:8
DEPUTY [1] - 29:21
derivative [12] - 11:3, 11:4, 11:5, 11:25, 12:10, 19:6, 19:9, 19:15, 21:7, 21:25, 23:15
derivatively [1] - 4:7
derogatory [1] - 17:15
described [1] - 7:10
designed [8] - 6:22, 6:23, 7:10, 7:14, 7:18, 19:3, 19:23
Designed [1] - 7:13
determination [2] - 12:5, 24:9
determine [1] - 17:6
determined [1] - 16:9
developed [1] - 11:15
different [1] - 26:7
differentiates [1] - 22:13
direct [7] - 4:6, 5:22, 10:6, 11:3, 12:7, 13:23, 14:1
directly [4] - 8:1, 9:18, 9:22, 24:21
director [1] - 23:14
directors [10] - 4:15, 9:16, 18:16, 18:25, 19:16, 20:9, 22:1, 22:7, 24:17, 25:14
disclose [8] - 4:3, 4:11, 6:1, 9:9, 17:9, 24:18, 25:11, 27:6
disclosed [2] - 10:17, 25:12
disclosing [2] - 9:4, 19:2
disclosure [7] - 7:16, 8:22, 10:18, 18:11, 18:19, 21:6, 27:6
disclosures [3] - 6:5, 22:16, 27:15
discovery [9] - 27:24, 28:2, 28:4, 28:5, 28:11, 28:16, 28:20, 29:7, 29:12
discretion [8] - 13:9, 17:5, 17:11, 17:24, 21:18, 21:20, 22:9, 22:15
discretionary [2] - 16:16, 16:17
discuss [1] - 18:21
discussed [1] - 16:10

discussion [1] - 14:11
Discussion [1] - 18:20
disinterested [1] - 22:1
disinterestedness [2] - 11:10, 11:11
DISMISS [1] - 1:20
dismiss [2] - 3:20, 28:1
dismissal [2] - 23:17, 23:20
dismissed [2] - 10:7, 27:20
disparaging [1] - 16:19
distinguish [1] - 11:23
district [2] - 19:15, 23:4
District [1] - 21:4
DISTRICT [4] - 1:1, 1:1, 1:15, 1:15
diverse [1] - 10:24
diversity [2] - 13:13, 13:19
Division [1] - 18:5
documents [3] - 14:13, 14:14, 14:15
dollars [1] - 13:1
down [2] - 10:2, 11:20
dress [1] - 25:5
due [1] - 26:2
duty [13] - 9:3, 9:4, 9:8, 9:10, 10:19, 10:21, 19:7, 20:6, 24:19, 24:20, 25:6, 25:10, 26:10

E

earnings [4] - 15:23, 15:25, 16:2, 17:16
easily [1] - 26:12
EAST [1] - 1:11
effect [2] - 17:12, 20:8
effective [1] - 19:23
effectively [1] - 20:14
eight [1] - 11:19
either [1] - 24:4
election [3] - 4:15, 9:15, 18:16
ELIZABETH [1] - 2:7
Elizabeth [1] - 3:8
elsewhere [1] - 18:3
enacting [1] - 12:21
entire [1] - 18:10
entirely [2] - 13:11, 16:17
entitled [1] - 18:11
equally [1] - 19:23

equivalent [1] - 20:8
ERIC [1] - 2:10
Eric [1] - 3:12
ESQUIRE [5] - 2:4, 2:7, 2:9, 2:10, 2:10
essence [1] - 18:2
essential [11] - 4:18, 4:23, 5:18, 7:24, 8:25, 9:14, 9:21, 12:8, 24:16, 27:14, 27:19
essentially [1] - 11:13
established [1] - 16:6
estate [1] - 20:1
estate's [1] - 20:2
et [1] - 1:7
exact [3] - 17:17, 25:4, 27:12
Exactly [2] - 8:8, 27:15
exactly [1] - 17:24
example [1] - 19:25
excess [1] - 13:1
excessive [1] - 19:16
executive [5] - 4:4, 10:12, 19:10, 21:12, 23:2
executives [6] - 10:18, 13:1, 15:21, 15:24, 16:8, 19:21
executor [1] - 20:1
exempted [1] - 11:13
exemption [1] - 11:20
exercise [3] - 17:23, 21:20, 22:6
exercising [2] - 13:8, 18:12
Exhibit [4] - 7:2, 14:22, 15:3, 15:4
Exhibits [1] - 6:18
exist [1] - 5:21
expect [1] - 16:8
expenses [1] - 7:12
explain [3] - 14:2, 17:14, 22:15
explained [2] - 22:8, 22:9
explains [1] - 14:24
Exxon [3] - 14:23, 20:9, 29:1
ExxonMobil [5] - 3:9, 3:22, 3:23, 7:11, 15:19

F

fact [15] - 4:11, 4:14, 7:14, 7:17, 8:2, 8:11, 8:24, 9:4, 11:24, 14:6, 14:10, 19:2,

20:16, 24:4, 24:10
factors [1] - 16:10
facts [4] - 13:11, 23:13, 25:11
failed [1] - 12:11
failing [1] - 9:9
fails [2] - 12:7, 12:10
failure [4] - 4:10, 11:6, 14:1
false [2] - 3:24, 8:23
familiar [1] - 24:21
famous [1] - 19:13
fascinating [1] - 8:14
fatally [2] - 4:6, 18:14
Fe [2] - 9:12, 10:20
federal [7] - 10:22, 13:12, 13:13, 13:17, 13:18, 21:19, 23:19
federalize [2] - 9:13, 10:21
few [3] - 11:15, 27:22, 29:7
fiduciary [13] - 9:3, 9:4, 9:8, 9:10, 10:19, 10:21, 19:7, 19:25, 20:6, 24:20, 25:6, 25:10, 26:10
filed [1] - 16:12
final [2] - 24:12, 24:16
fine [2] - 24:14, 29:17
firm [2] - 3:12, 26:24
First [2] - 13:11, 26:23
first [5] - 5:2, 12:1, 12:20, 13:22, 15:22
FISHER [1] - 1:10
five [5] - 8:18, 14:5, 16:1, 25:23, 25:25
flaw [2] - 4:9, 11:5
flawed [2] - 4:6, 18:14
focus [2] - 11:11, 18:7
focused [5] - 4:14, 28:10, 28:15, 28:20, 29:4
FOR [3] - 2:5, 2:7, 2:11
form [1] - 28:14
forth [4] - 4:17, 5:14, 6:3, 17:8
forward [1] - 28:10
four [4] - 17:19, 17:22, 17:23, 20:13
franchise [1] - 18:12
Francis [1] - 1:24
FRANCIS [1] - 1:24
fraud [1] - 11:21
frustrated [1] - 23:14
fully [1] - 10:16
fundamental [2] - 4:9, 11:5

Fundamentally [1] - 5:1
fundamentally [1] - 5:13
funds [1] - 20:1
futile [1] - 11:7

G

G.E [1] - 5:14
Gable [1] - 1:24
GABLE [1] - 1:24
Galef [1] - 23:10
GALEF [1] - 23:11
Garrison [1] - 19:14
general [1] - 25:3
Gershon [2] - 15:6, 15:7
Gershon's [3] - 14:13, 14:22, 15:4
given [4] - 8:24, 11:24, 22:22, 29:10
goal [1] - 23:11
goals [1] - 16:7
Goodman [1] - 9:19
goods [1] - 25:1
GOTSHAL [1] - 2:9
Gotshal [1] - 3:12
governing [1] - 22:24
government [1] - 12:23
grand [1] - 29:3
grant [1] - 10:11
grants [2] - 7:8, 10:10
guaranteed [1] - 20:3
guess [1] - 10:10

H

hac [1] - 3:11
half [4] - 16:20, 16:21, 17:16, 17:18
hard [3] - 5:10, 7:15, 7:22
hat [1] - 27:5
HAWKINS [1] - 2:10
Hawkins [1] - 3:12
heading [1] - 15:15
HEARING [1] - 1:20
high [1] - 20:13
highly [1] - 15:20
history [1] - 12:22
hold [1] - 20:1
Honor [34] - 3:5, 3:8, 3:15, 3:16, 3:19, 3:20, 4:16, 5:23, 7:3, 9:18, 11:24, 12:13, 12:15, 15:16, 18:2,

18:18, 23:23, 24:12, 26:13, 26:18, 26:20, 27:4, 27:17, 27:20, 27:25, 28:3, 28:7, 28:8, 28:21, 29:9, 29:10, 29:17, 29:18, 29:19
Honor's [1] - 29:11
HONORABLE [1] - 1:14
hoped [1] - 22:15
house [1] - 4:8
huge [1] - 6:17
hundred [4] - 17:19, 17:22, 17:23, 20:13

I

identical [1] - 20:3
ignored [1] - 11:23
implementing [1] - 16:15
implications [1] - 6:1
inadequate [1] - 23:16
incentive [1] - 20:10
included [1] - 18:19
includes [1] - 19:1
including [1] - 20:20
income [3] - 15:18, 17:16, 17:17
incur [1] - 19:16
indeed [1] - 11:16
independence [1] - 11:11
independent [2] - 13:17, 22:1
individual [2] - 3:10, 15:24
Industry [1] - 10:20
informally [1] - 28:8
information [6] - 8:11, 18:12, 20:22, 22:22, 23:16, 24:18
informed [2] - 18:9, 19:5
infringement [1] - 18:3
inquisition [1] - 29:3
instance [1] - 12:2
instead [1] - 20:12
insurance [1] - 20:4
insured [1] - 20:4
interest [1] - 23:18
interesting [1] - 6:14
Internal [2] - 16:14, 25:21
interrupting [1] - 14:8
investigation [3] - 5:7, 25:2, 25:12

**investments** [1] - 20:3
**involved** [1] - 6:6
**involves** [1] - 3:22
**Iqbal** [1] - 5:17
**IRS** [5] - 5:5, 17:3, 24:8, 24:13, 27:8
**issuance** [1] - 24:6
**issue** [9] - 6:20, 6:24, 8:21, 11:9, 11:10, 13:12, 21:25, 24:9, 26:25
**issued** [3] - 3:24, 16:12, 17:3
**issues** [3] - 16:15, 28:15, 29:1
**items** [2] - 6:1, 6:6

### J

**Jabil** [1] - 9:20
**JAMES** [1] - 2:9
**James** [1] - 3:10
**Jersey** [3] - 18:3, 19:8, 21:22
**JERSEY** [3] - 1:1, 1:11, 1:15
**Judge** [8] - 19:13, 21:5, 21:11, 21:17, 22:8, 22:17, 23:3, 28:4
**JUDGE** [1] - 1:15
**judge** [3] - 19:15, 23:4, 24:10
**judgment** [8] - 13:5, 20:15, 21:9, 21:21, 22:6, 22:20, 23:17, 23:21
**jumped** [1] - 14:24
**jurisdiction** [9] - 5:4, 5:13, 12:9, 13:12, 13:13, 13:14, 13:16, 13:19, 13:20

### K

**knowing** [1] - 5:9
**knows** [1] - 27:18

### L

**lack** [2] - 11:10, 18:14
**laid** [1] - 13:11
**last** [6] - 11:15, 11:19, 17:18, 19:12, 27:10
**late** [1] - 25:1
**law** [24] - 3:12, 4:6, 4:16, 5:13, 5:25, 8:24, 9:5, 9:8, 9:10,

9:13, 10:3, 10:22, 11:15, 11:22, 12:1, 15:19, 18:2, 20:25, 21:2, 22:4, 22:18, 22:25, 25:15, 27:19
**laws** [4] - 8:17, 21:19, 22:10, 22:11
**lawsuit** [1] - 17:12
**lawyers** [1] - 11:16
**lead** [1] - 14:20
**learned** [1] - 13:10
**least** [4] - 13:6, 14:5, 14:19, 22:18
**legislative** [1] - 12:22
**length** [1] - 18:13
**less** [4] - 16:11, 17:23, 20:14, 27:11
**levels** [1] - 16:8
**liability** [2] - 19:17, 26:11
**Life** [1] - 9:19
**lift** [1] - 28:16
**lifting** [1] - 29:12
**limit** [1] - 20:4
**limits** [1] - 15:19
**link** [13] - 4:18, 4:23, 5:19, 7:24, 7:25, 8:25, 9:15, 9:21, 12:8, 18:14, 24:16, 27:14, 27:19
**linking** [1] - 9:22
**listened** [1] - 27:21
**literally** [2] - 11:18, 24:7
**litigation** [4] - 11:25, 12:5, 12:6
**LLP** [2] - 2:6, 2:9
**long-term** [1] - 16:2
**look** [2] - 6:16, 28:18
**looking** [6] - 6:25, 7:1, 14:22, 15:1, 28:11, 28:12
**looting** [1] - 25:16
**lost** [1] - 26:24

### M

**management** [1] - 23:12
**mandate** [1] - 26:6
**MANGES** [1] - 2:9
**MARK** [1] - 2:4
**Mark** [1] - 3:5
**market** [1] - 21:15
**material** [7] - 18:12, 20:20, 20:23, 21:4, 23:3, 23:13, 24:13
**materials** [1] - 14:21
**Matter** [1] - 29:22

**matter** [8] - 4:5, 5:4, 5:13, 6:2, 7:9, 8:12, 12:9, 12:24
**matters** [3] - 7:7, 15:2, 15:16
**maximum** [1] - 15:25
**mean** [3] - 16:19, 16:25, 17:15
**meet** [6] - 6:22, 6:23, 7:10, 7:13, 7:14, 7:15, 7:18, 13:9, 16:6, 17:21, 22:4, 22:5
**mention** [1] - 11:2
**MICHAEL** [1] - 1:7
**might** [1] - 29:8
**million** [5] - 13:1, 17:19, 17:22, 17:23, 20:13
**Mills** [2] - 7:25, 10:4
**minimum** [2] - 14:17, 25:25
**minutes** [6] - 26:20, 27:10, 28:12, 28:13, 28:23, 28:24
**misleading** [1] - 8:23
**misrepresentation** [1] - 20:23
**misstatement** [2] - 4:19, 18:15
**moment** [3] - 13:18, 14:11, 16:21
**months** [1] - 11:19
**moon** [1] - 20:13
**morning** [2] - 14:21, 14:23
**most** [5] - 4:9, 5:16, 15:20, 26:21, 26:22
**motion** [3] - 3:18, 3:20, 28:1
**MOTION** [1] - 1:20
**move** [2] - 26:25, 29:6
**MR** [42] - 3:3, 3:5, 3:15, 3:16, 3:19, 4:2, 7:1, 7:5, 7:7, 8:8, 8:10, 10:12, 10:15, 10:25, 12:13, 12:15, 12:19, 13:22, 14:9, 15:4, 15:7, 15:11, 15:15, 15:18, 16:24, 17:2, 23:25, 24:3, 24:15, 25:21, 25:25, 26:18, 26:20, 26:22, 27:3, 27:25, 28:3, 28:21, 29:3, 29:9, 29:18, 29:19
**MS** [3] - 3:8, 29:10, 29:17
**must** [8] - 5:15, 6:1, 16:15, 16:16, 17:4,

17:6, 18:19

### N

**named** [1] - 19:13
**need** [9] - 7:23, 17:9, 22:4, 22:5, 25:9, 25:11, 26:15, 29:4, 29:5
**net** [2] - 17:16, 17:17
**never** [2] - 5:5, 5:6
**NEW** [3] - 1:1, 1:11, 1:15
**New** [5] - 13:15, 13:16, 18:2, 19:8, 21:22
**next** [3] - 15:18, 24:7, 29:7
**night** [1] - 25:1
**nine** [1] - 11:19
**NO** [1] - 1:5
**non** [3] - 4:11, 4:24, 9:15
**non-deductibility** [2] - 4:11, 4:24
**non-vote** [1] - 9:15
**noncompliance** [1] - 21:8
**normally** [1] - 4:15
**notes** [1] - 17:18
**nothing** [2] - 4:21, 6:8
**nothing's** [1] - 12:9
**number** [6] - 10:17, 12:19, 17:11, 17:20, 18:6, 20:14
**nutshell** [1] - 14:25

### O

**objection** [1] - 28:6
**objective** [4] - 13:5, 16:15, 16:17, 17:4
**observer** [1] - 17:6
**obviously** [3] - 9:1, 11:3, 28:25
**occurred** [1] - 9:15
**OF** [2] - 1:1, 1:15
**offering** [1] - 14:15
**office** [1] - 15:12
**OFFICIAL** [1] - 1:25
**old** [2] - 11:23, 21:2
**omission** [2] - 4:19, 9:23
**omissions** [1] - 5:19
**ON** [1] - 1:20
**once** [1] - 26:15
**One** [3] - 6:14, 13:4, 21:25
**one** [27] - 4:12, 5:1,

6:10, 6:12, 7:20, 10:9, 10:17, 11:17, 11:18, 13:7, 16:20, 16:21, 17:15, 17:16, 17:18, 17:19, 18:6, 18:19, 19:11, 20:4, 20:5, 20:7, 22:4, 23:13
**one's** [1] - 27:6
**ones** [2] - 12:3, 12:4
**operational** [1] - 16:7
**opportunity** [1] - 29:13
**opposite** [1] - 27:15
**option** [1] - 9:25
**options** [1] - 19:18
**order** [1] - 4:17
**ordered** [1] - 29:14
**ought** [2] - 7:16, 28:15
**outside** [1] - 17:6
**own** [1] - 29:5

### P

**packages** [1] - 4:4
**page** [7] - 7:5, 15:1, 15:5, 15:8, 15:11, 15:12
**pages** [1] - 15:13
**paid** [2] - 15:20
**papers** [2] - 24:24, 26:15
**paragraph** [1] - 15:22
**part** [4] - 7:23, 10:12, 11:12, 21:14
**parties** [1] - 10:23
**partner** [2] - 15:7, 19:13
**passed** [1] - 8:11
**Paul** [1] - 19:14
**pay** [1] - 19:21
**payments** [2] - 13:25, 26:1
**pays** [3] - 20:5, 20:7
**pendant** [1] - 13:19
**Penn** [1] - 18:5
**Penn-Texas** [1] - 18:5
**people** [2] - 13:7, 19:17
**percent** [9] - 15:25, 16:1, 16:20, 16:21, 17:16, 17:19, 20:5, 20:7
**perform** [1] - 21:15
**perhaps** [1] - 17:12
**period** [2] - 13:5, 13:7
**permitted** [1] - 23:16
**perspective** [1] - 12:21

**PETER** [1] - 1:14
**PGS** [1] - 1:6
**ph)case** [1] - 19:9
**phone** [1] - 29:15
**phrase** [1] - 25:7
**Pictures** [3] - 18:7, 19:19, 22:19
**PITNEY** [1] - 2:6
**Pitney** [1] - 3:9
**place** [2] - 5:2, 6:10
**PLAINTIFF** [2] - 1:4, 2:5
**plaintiff** [4] - 3:6, 3:21, 5:8, 11:17
**Plaintiff** [1] - 13:15
**plaintiffs** [2] - 7:16, 11:8
**plan** [5] - 10:1, 14:17, 25:15, 25:17, 26:1
**plans** [12] - 4:12, 4:25, 5:6, 6:9, 7:10, 8:16, 9:25, 14:10, 14:12, 15:23, 27:13, 27:17
**plead** [2] - 5:15, 5:18
**pleadings** [1] - 5:8
**pled** [5] - 4:21, 5:21, 8:2, 9:1, 13:12
**plus** [1] - 13:13
**point** [8] - 8:25, 9:21, 15:25, 16:1, 26:23, 27:3, 27:10, 27:12
**pointed** [2] - 5:3, 6:15
**points** [4] - 12:19, 23:22, 24:1, 24:16
**policy** [2] - 18:10, 23:19
**portion** [1] - 6:18
**positive** [1] - 15:23
**power** [1] - 13:8
**precedent** [1] - 22:25
**precisely** [1] - 22:13
**present** [2] - 27:23, 28:19
**prevents** [1] - 23:19
**previously** [2] - 7:9, 16:10
**primary** [1] - 3:13
**private** [2] - 8:20, 27:7
**pro** [1] - 3:11
**problem** [2] - 12:17, 12:18
**proceed** [2] - 28:14, 28:15
**proper** [1] - 12:6
**prospectus** [1] - 24:7
**proves** [1] - 27:12
**provide** [1] - 12:25
**providing** [1] - 23:15
**proxies** [1] - 18:20

**proxy** [18] - 3:23, 4:2, 4:14, 6:2, 6:7, 6:17, 8:4, 9:7, 9:9, 10:15, 11:13, 11:21, 13:24, 14:15, 14:23, 16:12, 24:5
**PSE&G** [2] - 21:23, 22:3
**PSLRA** [3] - 5:16, 27:25, 28:6
**public** [3] - 12:25, 14:14
**purpose** [1] - 14:11
**pursuant** [2] - 17:3, 26:1
**pursuit** [1] - 23:18
**put** [1] - 12:20
**putting** [3] - 5:12, 27:4, 27:5

**Q**

**qualifies** [1] - 20:15
**qualify** [3] - 20:16, 20:18, 28:3
**questioned** [1] - 5:5
**questions** [3] - 23:23, 23:24, 26:13
**QUINN** [18] - 2:9, 3:15, 3:19, 4:2, 7:1, 7:5, 7:7, 8:8, 8:10, 10:12, 10:15, 10:25, 12:13, 26:20, 26:22, 27:3, 27:25, 29:19
**Quinn** [10] - 3:10, 3:12, 14:6, 14:9, 18:13, 21:1, 24:19, 25:5, 25:13, 26:19
**Quinn's** [1] - 24:1
**quite** [2] - 23:14, 24:21
**quotation** [1] - 26:4

**R**

**R.M.R** [1] - 1:24
**rabbit** [2] - 27:4, 27:5
**rational** [1] - 6:12
**re** [4] - 14:6, 14:18, 14:19, 25:23
**re-approval** [3] - 14:6, 14:18, 14:19
**re-approved** [1] - 25:23
**read** [2] - 14:23, 26:16
**reads** [1] - 7:8
**ready** [1] - 20:2
**reality** [3] - 5:5, 6:3, 7:19

**really** [3] - 11:25, 14:24
**reason** [4] - 5:2, 11:2, 19:20, 22:11
**reasons** [2] - 12:10, 23:21
**reauthorized** [1] - 8:19
**received** [1] - 10:9
**recent** [2] - 5:17, 9:19
**recognize** [1] - 21:16
**recognized** [2] - 18:7, 19:10, 19:15
**recognizes** [1] - 18:3
**referred** [2] - 14:6, 14:9
**referring** [2] - 6:21, 26:4
**reflected** [1] - 26:3
**regard** [5] - 4:9, 6:1, 6:9, 6:20, 8:25
**regs** [1] - 27:8
**regulation** [3] - 5:24, 8:13, 8:21
**regulations** [6] - 16:6, 16:14, 17:3, 17:5, 18:17, 25:22
**reiterates** [1] - 9:21
**related** [3] - 7:12, 8:1, 10:5
**relates** [1] - 6:16
**relating** [3] - 6:6, 13:24, 21:8
**relationship** [1] - 8:3
**relevant** [4] - 6:18, 12:22, 13:11, 14:14
**relies** [1] - 9:18
**relying** [1] - 22:14
**remember** [1] - 17:17
**renewal** [1] - 26:2
**report** [1] - 16:10
**REPORTER** [1] - 1:25
**reports** [1] - 28:22
**represent** [1] - 16:7
**representation** [1] - 19:2
**request** [1] - 29:16
**require** [2] - 18:18, 22:12
**required** [7] - 1:23, 18:21, 22:16, 25:14, 25:15, 25:16, 25:17
**requirement** [9] - 5:25, 8:18, 11:14, 11:21, 21:24, 23:5, 24:11, 24:12, 26:6
**requirements** [7] - 6:22, 7:11, 13:3, 13:4, 13:9, 17:7, 22:5

**requires** [1] - 28:1
**rescheduling** [1] - 12:16
**RESNIK** [1] - 1:3
**Resnik** [5] - 3:1, 3:21, 4:7, 8:15, 10:6
**resolution** [1] - 24:9
**respect** [1] - 29:10
**respectfully** [4] - 13:10, 20:6, 20:17, 22:23
**respond** [3] - 23:25, 24:15, 27:23
**response** [2] - 17:12, 26:19
**restricted** [3] - 7:8, 10:10, 16:3
**result** [2] - 20:15
**Revenue** [2] - 16:14, 25:22
**reviewing** [2] - 14:21, 26:15
**Rifkind** [2] - 19:13, 19:14
**ripe** [2] - 24:4, 24:8
**ripeness** [1] - 12:8
**rise** [1] - 29:21
**risk** [1] - 20:4
**RODOS** [1] - 2:4
**Rodos** [1] - 3:6
**ROSEN** [25] - 2:4, 3:3, 3:5, 12:15, 12:19, 13:22, 14:9, 15:4, 15:7, 15:11, 15:15, 15:18, 16:24, 17:2, 23:25, 24:3, 24:15, 25:21, 25:25, 26:18, 28:3, 28:21, 29:3, 29:9, 29:18
**Rosen** [4] - 3:5, 3:7, 12:14, 26:24
**RUBY** [1] - 1:3
**Ruby** [1] - 3:21
**rule** [2] - 21:9, 22:21
**Rule** [1] - 5:16
**rules** [2] - 21:8, 27:8
**ruling** [1] - 29:11
**run** [1] - 29:8

**S**

**Salas** [1] - 28:4
**Santa** [2] - 9:12, 10:20
**Saper** [3] - 20:21, 21:3, 23:1
**satisfied** [1] - 17:7
**schedule** [1] - 28:5
**scheme** [3] - 16:18, 17:14, 17:15

**SEC** [1] - 20:19
**second** [4] - 4:22, 11:11, 14:1
**Second** [4] - 11:18, 23:7, 23:10, 26:25
**Section** [9] - 1:23, 6:3, 8:13, 12:21, 16:13, 17:3, 18:10, 23:11, 25:21
**securities** [4] - 10:22, 21:19, 22:10, 22:11
**see** [3] - 5:10, 7:22, 15:15
**seek** [2] - 14:1, 14:6
**Seinfeld** [1] - 23:9
**sell** [1] - 21:13
**senior** [1] - 16:8
**sense** [1] - 17:15
**sentence** [2] - 15:18, 16:4
**sentences** [1] - 16:4
**Service** [1] - 16:14
**set** [7] - 4:17, 5:13, 6:3, 13:6, 20:12, 22:2, 28:5
**Setting** [1] - 21:2
**seven** [3] - 4:13, 6:11, 27:18
**Shaev** [4] - 20:21, 21:3, 23:1, 27:11
**shareholder** [5] - 3:21, 16:11, 18:1, 18:15
**shareholder's** [1] - 18:4
**shareholders** [7] - 3:24, 14:5, 18:11, 18:25, 22:21, 23:3, 24:17
**SHER** [4] - 2:7, 3:8, 29:10, 29:17
**Sher** [2] - 3:9, 3:14
**SHERIDAN** [1] - 1:14
**short** [2] - 7:8, 16:1
**short-term** [2] - 7:8, 16:1
**show** [8] - 4:18, 7:23, 7:24, 8:2, 11:6, 14:13, 21:23, 22:6
**showing** [3] - 9:14, 12:2, 18:14
**shown** [1] - 20:17
**shows** [1] - 4:22
**significant** [1] - 26:11
**significantly** [1] - 16:11
**similar** [1] - 20:21
**similarly** [1] - 28:24
**simply** [2] - 8:21, 12:23

single [1] - 8:2
situation [3] - 18:24, 19:15, 26:7
slate [1] - 18:25
slightly [1] - 28:4
Smith [4] - 21:5, 21:17, 22:8, 22:17
Smith's [2] - 21:12, 23:3
sold [1] - 25:1
someone [2] - 14:7, 21:13
sorry [2] - 14:7, 14:9
speaking [1] - 21:11
special [1] - 11:20
specifically [6] - 5:15, 9:24, 12:21, 17:4, 18:21, 21:6
specificity [1] - 5:18
stamps [1] - 15:13
stand [1] - 25:14
standard [1] - 17:1
Star [2] - 18:7, 22:19
state [7] - 9:8, 9:13, 10:21, 18:4, 18:17, 25:2, 26:9
STATE [1] - 1:11
statement [7] - 4:10, 6:16, 6:17, 6:20, 13:24, 14:14
statements [8] - 3:23, 4:3, 6:2, 6:7, 6:21, 8:3, 8:5, 14:15
STATES [1] - 1:1
statute [3] - 14:3, 17:2, 29:11
statutory [2] - 26:6, 29:13
stay [4] - 28:9, 28:16, 28:19, 29:13
stayed [2] - 28:2, 29:12
still [2] - 10:3, 23:4
stock [5] - 7:8, 9:25, 10:10, 16:3, 19:17
stockholder [1] - 14:2
Straussenberg [1] - 19:9
STREET [1] - 1:11
subject [11] - 4:14, 5:4, 5:12, 6:2, 7:9, 12:9, 14:18, 15:24, 21:7, 23:5
subjected [1] - 26:11
subjective [4] - 16:9, 16:23, 17:10, 20:15
Subjective [1] - 16:24
submit [4] - 13:10, 20:6, 20:17, 22:23
sue [1] - 24:8

sufficient [2] - 9:14, 18:4
suit [3] - 16:12, 21:25, 25:6
summary [1] - 23:20
support [1] - 22:24
Supreme [10] - 5:17, 7:25, 9:6, 9:13, 10:3, 10:20, 19:8, 21:22, 22:3, 22:25
sustainable [1] - 13:18
system [5] - 16:20, 19:2, 19:21, 19:23, 20:9

## T

talks [2] - 15:22, 16:2
target [1] - 17:21
tax [19] - 5:23, 5:25, 6:1, 6:6, 6:13, 7:7, 8:17, 8:21, 15:2, 15:16, 15:18, 16:6, 18:22, 19:3, 19:17, 20:20, 23:2, 24:9, 26:11
taxation [1] - 12:24
term [6] - 7:8, 16:1, 16:2, 17:16, 17:17
terms [1] - 16:5
test [2] - 11:12, 17:10
Texas [1] - 18:5
thanking [1] - 12:16
there' [1] - 11:3
therefore [3] - 8:14, 22:11, 23:19
they've [5] - 7:19, 9:2, 16:16, 17:11, 26:10
Third [9] - 5:14, 9:10, 20:20, 21:3, 21:5, 23:1, 24:23, 25:9, 27:11
third [1] - 19:6
three [2] - 13:22, 15:20
Tillerson [3] - 9:3, 25:13, 28:25
timely [1] - 24:4
Title [1] - 1:23
TO [1] - 1:20
today [2] - 3:10, 10:3
top [2] - 15:7, 15:11
treatment [4] - 6:6, 18:22, 20:20, 23:2
TRENTON [1] - 1:11
Tri [2] - 18:7, 22:19
Tri-Star [2] - 18:7, 22:19

trivial [1] - 7:25
true [1] - 1:23
trumps [1] - 21:10
Truncale [1] - 19:18
TRUNCALE [1] - 19:18
try [2] - 4:22, 5:24
TV [1] - 25:2
twice [2] - 14:19, 26:15
two [12] - 11:16, 12:17, 13:22, 15:25, 16:4, 20:2, 20:3, 21:23, 22:18, 26:20, 26:24, 27:10
Twombly [1] - 5:17
type [1] - 28:19

## U

U.S [3] - 1:15, 1:25, 15:18
U.S.C [1] - 1:23
under [15] - 5:10, 5:15, 5:23, 6:4, 7:7, 7:22, 8:17, 8:21, 10:5, 10:22, 13:23, 25:2, 25:11, 26:8, 27:8
underlying [1] - 18:10
underscore [1] - 16:6
unfortunately [1] - 24:21
UNITED [1] - 1:1
Universal [1] - 19:19
unless [2] - 13:2, 23:22
Unless [1] - 26:13
untimely [1] - 24:6
up [9] - 8:14, 9:6, 9:24, 11:8, 11:12, 20:2, 25:5, 25:14, 28:5

## V

valid [1] - 14:12
various [1] - 25:2
versus [10] - 3:1, 5:14, 9:6, 9:20, 19:18, 20:21, 21:3, 22:10, 23:1, 23:9
vice [1] - 3:11
violation [3] - 11:13, 19:4, 19:5
vital [1] - 23:13
vote [13] - 8:7, 8:9, 8:10, 8:15, 8:16, 9:15, 9:22, 18:4, 18:9, 18:25, 19:5,

24:17, 26:9
voted [7] - 4:20, 5:20, 6:8, 8:1, 8:4, 27:13, 27:18
voting [2] - 18:1, 27:14
Vs [1] - 1:5

## W

waste [4] - 19:7, 19:8, 19:10, 26:10
ways [1] - 21:23
weeks [3] - 12:17, 27:22, 29:7
weigh [1] - 12:4
WEIL [1] - 2:9
Weil [1] - 3:12
Weiss [1] - 19:14
Werner [2] - 9:6
Westinghouse [5] - 21:5, 21:17, 22:8, 23:4, 24:10
Wharton [1] - 19:14
whatsoever [1] - 8:10
wheat [2] - 21:13
whole [1] - 4:8
wonder [1] - 5:1
word [1] - 16:7
words [3] - 17:5, 21:11, 21:12
works [1] - 17:14
worthwhile [1] - 29:8
wrapped [1] - 20:2
wrongful [1] - 18:8

## Y

year [10] - 13:6, 13:7, 14:17, 17:18, 19:12, 20:2, 20:5, 20:7, 24:6
years [12] - 4:4, 4:12, 4:13, 5:7, 6:10, 8:18, 11:16, 14:5, 25:7, 25:24, 25:25, 27:18
York [2] - 13:15, 13:16
yourself [2] - 24:20, 25:10

## Z

zero [2] - 15:25, 16:1