NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUBY RESNIK,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. BOSKIN, et al.,<br><br>      Defendants. | Civil Action No.: 09-5059 (PGS)<br><br><u>**OPINION**</u> |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on Defendants Michael J. Boskin, et al.'s ("Defendants") motion to dismiss ("Defendants' Motion to Dismiss") Plaintiff Ruby Resnik's ("Plaintiff") verified first amended complaint ("Plaintiff's FAC").

      On December 29, 2009, Plaintiff filed Plaintiff's FAC. Plaintiff alleges three causes of action in Plaintiff's FAC: (1) Defendants made materially false or misleading proxy solicitations in connection with certain Exxon Mobil Corporation ("Exxon") shareholder votes; (2) Defendants failed to seek required shareholder reapproval of a compensation plan for Exxon employees; and (3) Defendants' distribution of certain false or misleading proxy statements interfered with proper corporate governance. On March 1, 2010, the Motion to Dismiss by Defendants was filed.

      For the reasons set forth below, this Court grants Defendants' Motion to Dismiss.

# I

The facts of this case – as set forth in Plaintiff's FAC and Defendants' Motion to Dismiss papers – are as follows.

Plaintiff is currently a stockholder of Exxon. Plaintiff was a stockholder of Exxon at all times relevant to this litigation. There are a variety of defendants in this case. Plaintiff named Exxon as a defendant in this case. Exxon is a corporation organized under New Jersey laws and maintains a registered address in New Jersey. Plaintiff named the current members of Exxon's board of directors as defendants in this case (the "Exxon Directors"). In addition, Plaintiff named certain executive officers of Exxon as defendants in this case (the "Exxon Officers").

In 1997, at the time of Exxon's annual meeting, Exxon distributed a 1997 proxy statement that solicited – and obtained – shareholder approval of the material terms of certain performance awards that Exxon would pay as bonuses to particular Exxon executives (the "Short Term Program"). Under the Short Term Program, the maximum bonus to be granted in a single year to any recipient was not to exceed *two tenths of one percent* (0.2%) of Exxon's net income from operations.

In 2003, at the time of Exxon's annual meeting, Exxon distributed a 2003 proxy statement that solicited – and obtained – shareholder approval of the material terms of certain performance compensation that would be paid to Exxon employees (the "Program"). Exxon designed the Program "to help reward, retain, and motivate selected [Exxon] employees and to align . . . [these employees'] interests with the interests of [Exxon] shareholders through the grant of stock-based awards." Approximately 5,000 Exxon employees participate in the Program. The Program provides for a variety of stock-based compensation awards.

In 2008 and 2009, Exxon disseminated proxy statements for Exxon's annual meetings of shareholders (the "2008 and 2009 Proxy Statements"). The 2008 and 2009 Proxy Statements solicited shareholder votes for the election of the Exxon Directors, ratification of the selection of Exxon's independent auditor, and for various other proposals. According to Defendants, Exxon *never* asked Exxon shareholders to vote on either the Short Term Program or the Program in connection with the 2008 and 2009 Proxy Statements. In fact, Defendants maintain that Exxon did not ask Exxon shareholders to take any vote with respect to the tax treatment of compensation awarded under either the Short Term Program or the Program.

## II

When evaluating a motion to dismiss for failure to state a claim, the court accepts as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom, and to view such allegations and inferences in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1

F.3d 176, 183 (3d Cir. 1993) (citation omitted).  A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

<u>Plaintiff's First Cause of Action for False or Misleading Representations in Connection with the 2008 and 2009 Shareholder Votes Is Dismissed.</u>

Plaintiff states that Plaintiff is entitled to relief because Defendants "[made] materially false or misleading proxy solicitations in connection with the 2008 and 2009 shareholder votes." Plaintiff contends as follows:

> The acts of [Defendants] have injured [Plaintiff] directly by providing materially false information that the SEC specifically requires in proxy statements that solicit stockholders' proxies to elect directors and thereby depriving [Plaintiff] of the exercise of [Plaintiff's] informed corporate suffrage, including the election of directors.

Specifically, Plaintiff states that Defendants improperly solicited shareholder votes by erroneously asserting that the compensation awarded pursuant to the Short Term Program and the Program was tax-deductible.

Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)") governs the solicitation of proxies:

> It shall be unlawful for any person . . . in contravention of such rules and regulations as [the Securities Exchange Commission [the "SEC"]] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . .

15 U.S.C. § 78n(a)(1).  The SEC regulates such proxy solicitations as follows:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . *containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not*

4

>  *false or misleading* . . . .

17 C.F.R. § 240.14a-9(a) (emphasis added).

A plaintiff prevails on his/her Section 14(a) claim relating to a misrepresentation in a proxy statement only when: "(1) [the] proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) [] the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an *essential link in the accomplishment of the transaction.*" *Tracinda Corp v. DaimlerChrysler* AG, 502 F.3d 212, 228 (3d Cir. 2007) (emphasis added) (internal quotation marks and citations omitted).  Because of these stringent requirements, a plaintiff will prevail on his/her claim "only when the votes for a specific corporate transaction requiring shareholder authorization . . . are obtained by a false proxy statement, and that transaction was the *direct cause* of the pecuniary injury." *General Electric Co. v. Cathcart*, 980 F.2d 927, 932-33 (3d Cir. 1992) (emphasis added).

At the motion to dismiss stage at which this litigation sits, a court must dismiss a plaintiff's Section 14(a) claim where the plaintiff fails to show that "[the] proxy solicitations were . . . an *essential link* in the incurring of [the plaintiff's] losses." *See Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 584 (D. N.J. 1996) (emphasis added); *see also Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1063 (1st Cir. 1991) ("[P]laintiffs face [an] insuperable obstacle . . . [because] their complaint fails to establish a causal nexus between their alleged injury and some corporate transaction authorized (or defeated) as a result of the allegedly false and misleading proxy statements.").

Defendants contend that Plaintiff cannot prove the requisite "essential link" element necessary for Plaintiff to maintain Plaintiff's first cause of action.  Specifically, Defendants assert that Plaintiff cannot "connect the alleged misrepresentations [regarding tax-deductibility of

5

compensation] to anything that [Exxon] shareholders voted on in 2008 or 2009."

Defendants' assessment is correct. The subject matter of the shareholder votes in 2008 and 2009 did not include the Short Term Program or the Program. As Defendants accurately recount, "[the] 2008 and 2009 Proxy Statements solicited votes *only* for the election of [the Exxon Directors], ratification of the selection of [Exxon's] independent auditor, and various shareholder proposals."

In opposition to Defendants' arguments, Plaintiff asserts that Plaintiff's first cause of action remains viable even if no "essential link" connects the allegedly false or misleading statements in the 2008 and 2009 Proxy Statements and the 2008 and 2009 shareholder votes. In particular, Plaintiff emphasizes that "[w]here a proxy statement seeks stockholder votes to elect directors, SEC regulations require the proxy statement to [accurately] discuss the impact of the tax treatment of compensation." Plaintiff cites a particular provision in the Code of Federal Regulations in support of Plaintiff's proposition that Defendants were required to accurately analyze the tax treatment of compensation awarded. *See* 17 C.F.R. § 229.402(b)(2)(xii).

Plaintiff misstates the effect of the cited Code of Federal Regulations provision. In contrast to the skewed interpretation of the provision for which Plaintiff advocates, the applicable Code of Federal Regulations provision explicitly provides:

> While the material information to be disclosed . . . *will vary depending upon the facts and circumstances, examples of such information may include . . . among other things*, the following . . . [t]he impact of the *accounting and tax treatments of the particular form of compensation* . . . .

17 C.F.R. § 229.402(b)(2)(xii) (emphasis added). As mentioned earlier, the 2008 and 2009 Proxy Statements solicited shareholder proxies for the election of the Exxon Directors, the ratification of the selection of Exxon's independent auditor, and various shareholder proposals. As such, a

6

complete analysis of the "accounting and tax treatments" of compensation awarded under the Short Term Program and the Program would not assist shareholders in voting on these isolated issues. 17 C.F.R. § 229.402(b)(2)(xii).  The circumstances therefore did not mandate a disclosure of this accounting and tax information.

Plaintiff's first cause of action is therefore fatally flawed.  Plaintiff cannot draw the necessary causal link between the allegedly fraudulent or misleading disclosures and the 2008 and 2009 shareholder votes.  As a result, Plaintiff's first cause of action is dismissed.

<u>Plaintiff's Second Cause of Action for Defendants' Failure to Seek Stockholder Reapproval of the Program Is Dismissed.</u>

Plaintiff contends as follows:

> The failure of [Defendants] to present the Program for reapproval . . . injured [Plaintiff] directly by depriving [Plaintiff] of the right to vote, as required by the [Internal Revenue Code], [a specific provision in the Treasury Regulations][,] and New Jersey law requiring [the Exxon Directors] to meet [the Exxon Directors'] fiduciary duty to achieve maximum tax benefits for Exxon.

As such, this Court must evaluate both whether: (1) Defendants improperly deprived Plaintiff of the right to vote regarding the reapproval of the Program under the applicable provisions of the Internal Revenue Code and the Treasury Regulations; and (2) Defendants improperly deprived Plaintiff of this same right to vote under New Jersey law requiring that corporate directors meet a fiduciary duty to achieve maximum tax benefits for the corporation.

**<u>The Internal Revenue Code and Treasury Regulations Did Not Require Defendants to Seek Shareholder Reapproval of the Program at the Time Defendants Distributed the 2008 and 2009 Proxy Statements..</u>**

Stockholder reapproval of performance-based compensation is required every five years in circumstances in which "the compensation committee has [the] authority to change the targets under

a performance goal." Treas. Reg. § 1.162-27(e)(4)(vi). In an effort to preserve Plaintiff's second cause of action, Plaintiff contends that Exxon's compensation committee (the "Exxon Compensation Committee") maintained authority to modify the targets under Exxon's performance goal. Specifically, Plaintiff asserts that "the Program [] expressly provided that [the Exxon Compensation Committee] had the authority to determine the maximum, minimum, and target values of awards [under the Program]."

> Plaintiff relies upon Section XI(2) of the Program to support Plaintiff's argument:
>
>> Performance stock or performance stock units granted . . . will be subject to the following [] terms:
>>
>> (a) The award will be subject *both* to *the shareholder-approved performance goal* specified in paragraph (b) of this Section XI(2) *and to the attainment of such other objective goals* as shall be pre-established by the Compensation Committee based on one or more of the following performance criteria: earnings per share, net income, cash flow, operating income, return on capital employed, and total shareholder return.
>>
>> (b) The maximum amount of awards granted under these terms to any one grantee for any one year is *limited to the shareholder-approved performance goal of one-half of one percent (0.5 percent) of the Corporation's net income from operations for that year . . . The Compensation Committee may award a grantee less, but not more, than the maximum award under this Section XI(2).*

(emphasis added). Plaintiff maintains that any award granted pursuant to the Program is unlawfully discretionary because such an award is subject to the "attainment of [numerous] objective goals as shall be pre-established by [the Exxon Compensation Committee] based on [a variety of different] performance criteria." According to Plaintiff, this alleged discretionary authority provided to the Exxon Compensation Committee constitutes "precisely the kind of authority . . . that triggers the requirement of reapproval by the stockholders every five years."

This Court is not persuaded by Plaintiff's argument. A review of Section XI(2)(b) reveals that Exxon set in place a *shareholder approved performance goal* that required Exxon to achieve positive net income from operations before *any* performance award could be earned. Specifically, Exxon instituted a shareholder approved performance goal of one-half of one percent of Exxon's yearly net income for operations. This performance goal was non-discretionary. *See* Treas. Reg. § 1.162-27(e)(2)(vii)(Ex. 3).[1] Moreover, the fact that the Exxon Compensation Committee preserves the authority to ultimately reduce this performance award *does not* signify that the performance goal was discretionary. Treas. Reg. § 1.162-27(e)(2)(iii) ("A performance goal is not discretionary . . . merely because the compensation committee reduces or eliminates the compensation or other economic benefit that was due upon attainment of the goal.").

Here, the Exxon Compensation Committee does not maintain discretionary authority to alter the performance goal under the Program. As a result, Defendants had no obligation to seek shareholder reapproval of the Program at the time Exxon distributed the 2008 and 2009 Proxy Statements. Defendants therefore did not improperly deprive Plaintiff of the right to vote under the Internal Revenue Code and the Treasury Regulations. As such, Plaintiff's second cause of action is dismissed with respect to such allegations.

---

[1] This provision of the Treasury Regulations provides that a performance goal is considered to be non-discretionary where "the bonus is based on a percentage of [a corporation's] total profits for the fiscal year." According to this provision of the Treasury Regulations, "[a]lthough some sales are virtually certain for virtually all public companies, it is substantially uncertain whether a company will have profits for a specified future period even if the company has a history of profitability."

**Because the Exxon Directors Had No Fiduciary Duty to Achieve Maximum Tax Benefits for Exxon, Defendants Were Not Required to Seek Shareholder Reapproval of the Program At the Time Defendants Distributed the 2008 and 2009 Proxy Statements.**

Plaintiff maintains that Defendants deprived Plaintiff of the right to vote that is "required by . . . New Jersey law requiring [the Exxon Directors] to meet [the Exxon Directors'] fiduciary duty to achieve maximum tax benefits for Exxon." Defendants contend that no such fiduciary duty exists, and therefore Defendants were not required to seek shareholder reapproval of the Program.

Plaintiff cites only *one New Jersey case* in support of Plaintiff's contention that New Jersey law requires corporate directors to achieve maximum tax benefits for a corporation. *See Seidman v. Clifton Sav. Bank, S.L.A.*, 2009 WL 2513797, at *12 (N.J. Super. Ct. App. Div. Aug. 19, 2009). Plaintiff's significant reliance upon *Seidman* is misplaced. The portion of the *Seidman* decision to which Plaintiff cites does *not* stand for the proposition that New Jersey law requires corporate directors to achieve maximum tax benefits for the corporation. 2009 WL 2513797 at *12 (citation omitted).

In fact, the section of *Seidman* upon which Plaintiff relies revolves around the "corporate waste" doctrine, a separate area of law which provides that liability must be imposed upon corporate directors whenever there is "an exchange of corporate assets [that is] for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." 2009 WL 2513797 at *12 (internal quotation marks and citation omitted). *Seidman* involved allegations that corporate directors engaged in corporate waste by paying a consultant (who previously served as chairman of the board of directors), providing excessive compensation to the existing chairman of the board of directors, allocating maximum benefits under an incentive plan, and continuing a retirement plan for the board of directors. *Ibid.*

Corporate waste is not synonymous with the Exxon Directors' alleged failure to maximize tax benefits for Exxon. As such, Plaintiff has failed to adequately plead that Defendants violated New Jersey law requiring corporate directors to maximize a corporation's tax benefits. Plaintiff's second cause of action is therefore dismissed with respect to such allegations.

<u>Plaintiff's Third Cause of Action for Interference with Proper Corporate Governance Is Dismissed.</u>

Plaintiff's third cause of action constitutes "a stockholder's derivative action on behalf of Exxon." In support of Plaintiff's derivative claim, Plaintiff contends:

> "The acts of the [Exxon Directors and the Exxon Officers] in distributing the false 2008 and 2009 proxy statements have injured [Exxon] by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for [the Exxon Directors] and by causing [Exxon] to issue payments to senior management that were not properly deductible."

According to Plaintiff, "the [Exxon Directors'] payment of non-tax deductible compensation to the [Exxon Officers] . . . [was] irrational and constitute[d] waste, and injure[d] [Exxon] by causing [Exxon] to lose tax benefits and incur unnecessary tax liabilities."

Because Plaintiff's third cause of action is a derivative claim, this claim may not proceed unless Plaintiff demonstrates that: (1) Plaintiff demanded that the Exxon Directors institute an action, and the Exxon Directors refused to do so; or (2) it would have been futile for Plaintiff to make such a demand. *See Fagin v. Gilmartin*, 432 F.3d 276, 280 (3d Cir. 2005). Plaintiff concedes that Plaintiff did not demand that the Exxon Directors institute such an action. As a result, Plaintiff's action survives Defendants' Motion to Dismiss only if Plaintiff adequately pled that it would have been futile for Plaintiff to make such a demand. *See Fagin*, 432 F.3d at 280.

Specifically, Plaintiff's claim survives only if Plaintiff pled "facts creating a reasonable doubt

11

that: (1) the [Exxon Directors] [were] disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *In re PSE & G S'holder Litig.*, 173 N.J. 258, 282 (2002). Plaintiff bore the burden of establishing demand futility. *Id.* at 287. In order to satisfy this burden, Plaintiff was required to plead with particularity the facts supporting Plaintiff's claim of demand futility. *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 23.1 (b)(3) ("[A plaintiff must] state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort.").

Plaintiff has not sought to persuade this Court that Plaintiff pled with particularity facts supporting demand futility. On the contrary, Plaintiff has taken the alternative approach of arguing that because of the subject matter of Plaintiff's claim – "misrepresentation and omissions in a proxy statement"[2] – Plaintiff was not required to comply with traditional demand procedure. The Court

---

[2]

In addition to Plaintiff's Section 14(a) allegations, Plaintiff sets forth a corporate waste claim in support of Plaintiff's third cause of action. With respect to the demand procedure, Plaintiff asserts that demand would have been futile because the Exxon Directors' actions were not the product of a valid exercise of business judgment. In particular, Plaintiff alleges: "[The Exxon Directors] [have] irrationally squandered millions of dollars in arranging corporate business to increase rather than reduce [Exxon's] tax liabilities." In addition, Plaintiff contends: "New Jersey law and federal policy excuse demand whenever the challenged act of the board is not the product of a valid exercise of business judgment . . . . [The Exxon Directors'] conduct concerning the misrepresentations in and omissions from a proxy statement are not matters of business judgment . . . ."

As mentioned above, Plaintiff was required to allege demand futility with particularity. Plaintiff has not satisfied this obligation. Although Plaintiff proffers the general allegation that the Exxon Directors' actions were not "the product of a valid exercise of business judgment," Plaintiff fails to support this allegation with specific facts. As a result, Plaintiff has failed to allege that demand would have been futile with respect to Plaintiff's waste claim. Plaintiff's waste claim in support of Plaintiff's third cause of action is therefore dismissed.

12

is not persuaded by this argument. Numerous courts have *specifically* held that a plaintiff who sets forth a Section 14(a) claim must still comply with demand procedure before initiating this litigation. *See, e.g.*, *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *6 (S.D.N.Y. 2006) ("[S]ince the demand requirement merely recognizes the board's privileged position by providing it with an initial decision-making opportunity, the demand requirement should also be applied to Section 14(a) litigation." (citations omitted)); *In re IAC/InterActiveCorp Secs. Litig.*, 478 F. Supp. 2d 574, 606 n. 17 (S.D.N.Y. 2007) ("[D]erivative plaintiffs' claim pursuant to Section 14(a) . . . is also dismissed for failure to plead demand futility with adequate particularity." (citations omitted)).

In support of Plaintiff's claim that Plaintiff was excused from complying with traditional demand procedure, Plaintiff cites a variety of cases. For example, Plaintiff relies upon a Second Circuit decision – *Galef v. Alexander*, 615 F.2d 51, 63-64 (2d Cir. 1980) – for the assertion that "federal policy prevents the summary dismissal of [Section 14(a)] claims pursuant to the business judgment of those defendant directors." Moreover, Plaintiff relies upon a Southern District of New York decision for the proposition that business judgment is not implicated "with respect to the claim of misstatements and omissions in the proxy statement," and, as a result, a plaintiff does not need to make a demand before litigating such a claim. *See Vides v. Amelio*, 265 F. Supp. 2d 273, 276 (S.D.N.Y 2003). Plaintiff additionally cites a District of Delaware decision for the position that "[when] [a defendant] ma[kes] a false or misleading statement [in promising] tax deductions to shareholders," a plaintiff is not required to make a demand on the board of directors before filing a lawsuit." *See Seinfeld v. Barrett*, 2006 WL 890909, at *3 (D. Del. Mar. 31, 2006).

After considering Plaintiff's arguments, this Court is convinced that the traditional demand requirements still apply when a plaintiff sets forth claims of misrepresentations and/or omissions in

a proxy statement. With respect to the thirty-year old *Galef* case, a recent decision clarified that *Galef* was a limited ruling confined to the application of the business judgment rule:

> [*Galef*] support[s] the proposition that the business judgment rule cannot be interposed as a bar to actions alleging misrepresentations or omissions in proxy statements. *However, [Galef] [cannot] be read as excusing a shareholder from making a demand upon the corporate board before commencing a derivative action alleging a violation of section 14(a).*

*See Bader v. Blankfein*, 2008 WL 5274442, at *6 (E.D.N.Y Dec. 19, 2008) (emphasis added).

Moreover, *Vides* has little persuasive effect upon this Court for two reasons. First, according to the *Bader* court, as of late 2008, "no fewer than five other district courts [had] *expressly* refused to follow [the *Vides* decision]." *Bader*, 2008 WL 5274442 at *6 (emphasis added) (citations omitted). Second, the *Vides* court improperly focused exclusively on the notion that the decision as to what information to put in a proxy statement is not a decision requiring "business judgment:"

> Although [the *Vides* court] may have been correct in observing that the decision of whether to include information in a proxy statement does not require an exercise of business judgment, [the *Vides* court] *ignored the fact that directors must still use their business judgment in deciding what course of action to take when alerted to a materially false statement in a corporate proxy statement*. Under such circumstances, the directors must do more than simply engage in a legalistic determination of whether the defects are material; they must also decide whether litigation is the best avenue to rectify the problem. *If shareholders could elect to sue on behalf of a corporation without consulting the board of directors whenever they deemed a proxy statement to contain materially false information, shareholders could effectively usurp the board's decision as to whether litigation was merited*.

*Id*. at *6 (emphasis added).

Finally, the *Seinfeld* decision does not persuade this Court to craft the bright-line rule for which Plaintiff advocates. Although the *Seinfeld* court held that the defendants' false or misleading

statements regarding tax deductions signified that demand would be futile, the *Seinfeld* court cited *no case law* whatsoever for this assertion. *See Seinfeld*, 2006 WL 890909 at *3. Moreover, the logic underlying the *Seinfeld* decision has been struck down:[3]

> *We concur with the [] courts that have [] refused to recognize an exception to the demand requirement in instances in which the underlying wrong concerns alleged misrepresentations or omissions in a proxy statement.* Such an exception would unnecessarily divest directors of the customary power they hold in the initiation and management of litigation in any instance where the alleged wrong to the corporation resulted from the issuance of a proxy statement.

*Bader v. Anderson*, 179 Cal. App. 4th 775, 837-38 (Cal. Ct. App. 2009) (emphasis added).

After considering all relevant authority, this Court is convinced that the traditional demand requirements apply to Plaintiff's derivative claims. Because Plaintiff failed to comply with traditional demand procedure, Plaintiff's third cause of action is dismissed.

<u>Although this Court Dismisses Plaintiff's FAC, this Court Grants Plaintiff Twenty-one Days Leave to Amend Plaintiff's FAC.</u>

When a defendant's motion to dismiss is granted, the court should "freely" provide the plaintiff with leave to amend its dismissed causes of action "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Third Circuit has stressed that "[l]iberality is the keystone of [amending federal complaints] . . . [and] [u]nder [this] liberal pleading philosophy . . ., an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or

---

[3] Another court – although never mentioning the *Seinfeld* decision by name – echoed this sentiment: "[Although] plaintiffs contend that . . . [Section 14(a) claims] do not require pre-suit demand . . . the weight of authority, including recent authority . . . has disregarded this argument." *In re F5 Networks, Inc.*, 2007 WL 2476278, at *14 (W.D. Wash. Aug. 6, 2007) (citations omitted); *see also In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007) ("The weight of the authority supports requiring plaintiffs to make a demand or plead that demand was futile in alleging a claim under Section 14(a).").

prejudice to the defendant as a result of the delay." *Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. Appx. 161, 165 (3d Cir. 2007) (internal quotation marks and citation omitted). A court may deny leave to amend a pleading, however, where any such amendment would prove futile. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).

This Court recognizes that Plaintiff has already amended Plaintiff's initial complaint once. In consideration of the liberal amendment standard above, however, this Court holds that "justice . . . requires" that Plaintiff be afforded one final opportunity to cure all deficiencies with regard to Plaintiff's three causes of action. *See* Fed. R. Civ. P. 15(a)(2). As a result, this Court provides Plaintiff with twenty-one days leave to amend Plaintiff's first, second, and third causes of action.

## III

In light of the foregoing, this Court grants Defendants' Motion to Dismiss. Plaintiff has twenty-one days in which to amend Plaintiff's first, second, and third causes of action.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

February 17, 2011